In the

# United States Court of Appeals

### For the Seventh Circuit

No. 02-2500

AMERICAN BANKERS LIFE ASSURANCE COMPANY
OF FLORIDA and AMERICAN BANKERS INSURANCE
COMPANY OF FLORIDA,

*Plaintiffs-Appellants*,

*v.*

DARRELL J. EVANS,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 02-CV-126-WDS—**William D. Stiehl**, *Judge.*

ARGUED DECEMBER 13, 2002—DECIDED FEBRUARY 11, 2003

Before RIPPLE, KANNE, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* When Darrell Evans sued
American Bankers Life Assurance Company of Florida,
American Bankers Insurance Company of Florida (collec-
tively "American"), and Lowe's Home Centers, Inc., in an
Illinois court, American responded by petitioning a fed-
eral court to compel Evans to arbitrate his claims instead.
The district court granted Evans's motion to dismiss Amer-
ican's petition for lack of subject matter jurisdiction, and
American appeals. We affirm.

The Federal Arbitration Act governs the arbitration
agreement in Evans's cardholder contract but does not

grant independent federal-question jurisdiction and so the court, after noting that the parties are of diverse citizenship (Evans is an Illinois citizen and American is incorporated and has its principal place of business in Florida), set out to determine whether the stakes of an arbitration of Evans's claim would exceed $75,000. *See* 9 U.S.C. § 4; 28 U.S.C. § 1332; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983); *Caudle v. Am. Arbitration Ass'n*, 230 F.3d 920, 922 (7th Cir. 2000); *We Care Hair Dev., Inc. v. Engen*, 180 F.3d 838, 840 n.1, 841 (7th Cir. 1999); *The Barbers, Hairstyling for Men & Women, Inc. v. Bishop*, 132 F.3d 1203, 1204 (7th Cir. 1997). Evans's state-court complaint, in which he sought to represent a nationwide class of Lowe's credit card holders, accused American of violating the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act") by charging credit insurance premiums to his Lowe's account without his consent but did not request a specific type or amount of damages, although it did specify that the damages awarded were "in no event to exceed" $75,000. The district court properly ignored this detail—it was neither a limit on recovery, *see* 735 ILCS 5/2-604; *BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548, 552 (7th Cir. 2002); *The Barbers*, 132 F.3d at 1205, nor a demand for $75,000, *see De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995)—and looked instead to the claim's actual value, *see In re Brand Name Prescription Drugs Antitrust Litigation*, 248 F.3d 668, 671 (7th Cir. 2001), which the court determined included both actual and punitive damages.

Evans introduced evidence showing that his actual damages were low: a letter written to his attorney by Wendy Hufford, Senior Litigation Counsel for the company that administers Lowes's credit program, in which Hufford stated that Evans had been charged a total of $118.05 in credit insurance premiums and that those charges had been placed "in dispute" and the coverage cancelled at

Evans's request, and an authenticated copy of a credit card bill indicating that the amount ($118.05) was disputed. American offered no contrary evidence on the amount of Evans's actual damages, but it did offer an affidavit from a law professor named George Priest who opined that the total amount in controversy in the case exceeded $75,000 based on his "research and study of damages verdicts awarded in Illinois and in other jurisdictions." Priest summarized the allegations in Evans's state-court complaint and listed the amounts of damages awarded by courts in several other cases but included no additional facts about Evans's claim and offered no opinion on the outcome of an arbitration of that claim. The district court reviewed the cases cited in Priest's affidavit and noted that some of them included awards for emotional distress (a type of "actual" damages, as American points out, *see*, *e.g.*, *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 878 (7th Cir. 2001)), but because there was no evidence (and no suggestion in the complaint itself) that Evans suffered emotional distress and, in the court's view, "no[ ] attempt" by American to refute Evans's assertion that his actual damages were limited to his $118.05 economic loss, the court adopted Evans's figure.

The parties offered no additional evidence on the amount of punitive damages an arbitrator might award, but the court noted that Professor Priest averred in his affidavit that court-awarded punitive damages often exceed compensatory damages "by some multiple." The affidavit did not offer categorized damages estimates, however, and the court does not appear to have given it any particular weight (something American does not argue was error). Instead, the court observed that a punitive award of nearly $75,000—one 635 times Evans's actual damages—was untenable on the facts before it and thus concluded it was "sufficiently certain as a matter of federal law" that the jurisdictional amount was not satisfied. The court cited *Del*

*Vecchio v. Conseco, Inc.*, 230 F.3d 974 (7th Cir. 2000), in which we held that no diversity jurisdiction existed over a suit filed in federal court that depended on a punitive award 125 times the compensatory damages to satisfy the amount-in-controversy requirement and noted that such an award would be excessive.

American first insists that the district court erred in failing to accord a presumption of correctness to its own assessment of the amount in controversy. While it is true that American, as the federal-court plaintiff, enjoyed such a presumption initially, *see The Barbers*, 132 F.3d at 1205, it lasted only until Evans introduced specific evidence showing that the real amount was much lower, *see*, *e.g.*, *Sapperstein v. Hager*, 188 F.3d 852, 856 (7th Cir. 1999); *The Wellness Cmty. (R)-Nat'l v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995); *Rexford Rand Corp. v. Ancel*, 58 F.3d 1215, 1218 (7th Cir. 1995). As the party seeking to invoke federal jurisdiction American bore the ultimate burden of proof as to the jurisdictional amount. *See*, *e.g.*, *Del Vecchio*, 230 F.3d at 979; *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997). American concedes as much, so we have difficulty understanding its argument that the district court was required to assess an amount for emotional distress damages, for example, even though American introduced no evidence on this point. American similarly offered no evidence tending to show that its conduct was "outrageous" (a requirement for punitive awards under the Consumer Fraud Act, *see Ekl v. Knecht*, 585 N.E.2d 156, 164 (Ill. App. Ct. 1991)) or even an argument that such evidence existed but was for some reason unavailable to American. All American did was point to the theoretical availability of certain categories of damages, and that is not enough. *Cf. Anthony v. Sec. Pac. Fin. Servs., Inc.*, 75 F.3d 311, 316-17 (7th Cir. 1996) (no competent proof of jurisdiction where plaintiffs relied solely on facts alleged in complaint, which

described conduct not egregious enough to justify punitive damages under Illinois law).

American also argues that the district court erred in relying on *Del Vecchio* because arbitral awards are not subject to the judicial review for excessiveness that we discussed in that case. That is true, *see, e.g., Davis v. Prudential Sec., Inc.*, 59 F.3d 1186 (11th Cir. 1995), but ultimately unimportant. *Del Vecchio* stands for the proposition that, when critically assessing speculative claims that "assert[ ] a right to punitive damages at the far upper end of the possible distribution of outcomes," one factor courts may consider is whether an award in the necessary amount might be deemed excessive. 230 F.3d at 978-80. Enforcement of the statutory limits on federal court jurisdiction is no less important when the underlying claim involves arbitration; excessiveness cases therefore provide courts with a helpful benchmark in those cases as well.

The judgment of the district court is AFFIRMED. Evans's request for sanctions is DENIED.

A true Copy:

     Teste:

                _____
                *Clerk of the United States Court of*
                *Appeals for the Seventh Circuit*