# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 03-1628

AMERICA'S MONEYLINE, INCORPORATED,

*Plaintiff-Appellant,*

*v.*

JOSEPHINE COLEMAN,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 02 C 1267—**William D. Stiehl**, *Judge.*

ARGUED SEPTEMBER 25, 2003—DECIDED MARCH 15, 2004

Before CUDAHY, RIPPLE and KANNE, *Circuit Judges.*

RIPPLE, *Circuit Judge.* America's MoneyLine, Inc. appeals the district court's dismissal of its petition to compel arbitration. The district court based its dismissal on the lack of subject matter jurisdiction because the requisite jurisdictional amount was not alleged. For the reasons set forth in this opinion, we affirm the judgment of the district court.

# I

# BACKGROUND

## A. Facts

Josephine Coleman filed a class action complaint in Illinois state court against America's MoneyLine, Inc. She alleged consumer fraud and unjust enrichment against MoneyLine, the lender in Ms. Coleman's residential mortgage loan. She alleged that MoneyLine had charged a $30 courier fee at closing, allegedly to reimburse it for the amount that it had to pay to deliver by courier loan documents to the title company. The complaint alleges that only a portion of the $30 actually went to a courier and that the rest was secretly kept by MoneyLine.

The contract between the parties had an "Arbitration Rider"; it stated that "all disputes, claims, or controversies arising from or related to the loan . . . shall be resolved by binding arbitration, and not by court action." Joint App. at 7 (Arbitration Rider). The Arbitration Rider also required that all arbitrations be conducted individually, thus preventing "class arbitrations." *Id.* Based on the Arbitration Rider, MoneyLine filed a petition to compel arbitration in the United States District Court for the Southern District of Illinois. The petition alleged that the district court had diversity jurisdiction. *See* 28 U.S.C. § 1332. Ms. Coleman responded by filing a motion to dismiss for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). She submitted that the amount in controversy did not exceed $75,000. The district court granted the motion and dismissed MoneyLine's petition. MoneyLine then timely appealed to this court. The state court then granted MoneyLine's motion to stay the state court proceedings pending resolution of this appeal.

## B.  District Court Proceedings

This case was before the district court on Ms. Coleman's motion to dismiss for want of jurisdiction. There is no question about the parties' diversity of citizenship. MoneyLine is a Virginia corporation with its principal place of business in Virginia. Ms. Coleman is a citizen of Illinois. The only dispute before the district court was whether the amount-in-controversy requirement, as stated in 28 U.S.C. § 1332(a), was met.

With respect to the amount in controversy, the district court denied two alternative arguments by MoneyLine that the amount in controversy exceeded $75,000. First, the court rejected MoneyLine's claim that the amount in controversy in the underlying dispute exceeded $75,000 because of attorney's fees and punitive damages. The court held that punitive damages could not be 2,500 times the compensatory damages ($30). It further ruled that attorney's fees only count toward the amount in controversy requirement if they were incurred before the filing of the lawsuit, and MoneyLine did not claim that its fees prior to the suit were so extensive as to meet the jurisdictional amount. This ruling is not before us on appeal.

Next, the district court also addressed MoneyLine's alternative amount-in-controversy argument: that the amount in controversy ought to be measured by the value to MoneyLine of enforcing the Arbitration Rider. In rejecting this submission, the court held that, under Section 4 of the Federal Arbitration Act ("FAA"), courts have held consistently that the amount in controversy is determined by the amount at stake in the underlying dispute, whether it be the potential state court award or the amount an arbitrator could award in an arbitration. The district court further rejected MoneyLine's argument that this rule ought not apply when the defendant in the underlying action files a

petition to compel arbitration as a separate and independent federal lawsuit. Relying on our decision in *We Care Hair Dev., Inc. v. Engen*, 180 F.3d 838, 841 (7th Cir. 1999), the court held that, although a petition to compel arbitration is a separate lawsuit, the amount in controversy must be determined by the stakes of the potential arbitration. The court then concluded that, in this case, an arbitrator could not award in excess of $75,000. Thus, the court concluded, the statutory amount in controversy was lacking, and no diversity jurisdiction existed.

## II

## DISCUSSION

We review de novo a district court's decision regarding subject matter jurisdiction. *See Johnson v. Apna Ghar, Inc.*, 330 F.3d 999, 1001 (7th Cir. 2003). We begin that inquiry by reading the text of the statute. Section 4 of the FAA provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

By its plain wording, then, Section 4 permits a party to file a petition to compel arbitration in the district court. *See Kasap v. Folger, Nolan, Fleming & Douglas, Inc.*, 166 F.3d 1243, 1245 (D.C. Cir. 1999). However, as the Supreme Court has

noted, the "save for such agreement" language of Section 4 does not *itself* grant jurisdiction to federal courts, nor does it permit federal jurisdiction to be invoked under the general federal question jurisdiction statute, 28 U.S.C. § 1331. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 n.32 (1983), *superseded on other grounds as stated in Bradford-Scott Data Corp., Inc. v. Physician Computer Network, Inc.*, 128 F.3d 504, 506 (7th Cir. 1997) (noting that "[9 U.S.C.] § 16(b)(1) upsets the principal holding of *Moses Cone*"). Rather, to assert a cause of action under Section 4, "there must be diversity of citizenship or some other independent basis for federal jurisdiction." *Id.* As the Supreme Court explained in *Moses H. Cone*:

> The Arbitration Act is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 (1976 ed., Supp. V) or otherwise. Section 4 provides for an order compelling arbitration only when the federal district court would have jurisdiction over a suit on the underlying dispute; hence, *there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue.*

*Id.* (emphasis added).

Our colleagues in the Fifth Circuit have placed succinctly this approach in historical context. Writing for that bench in *Prudential-Bache Securities, Inc. v. Fitch*, 966 F.2d 981 (5th Cir. 1992), Judge Davis noted that, before the FAA was enacted, federal courts would not enforce a claim for specific performance of an agreement to arbitrate. *Id.* at 987. In those days, the courts employed the rationale of the arcane English common-law rule that arbitration provisions were unenforceable because the effect of the arbitration provision was

to "oust" the court of jurisdiction over the claim. *Id.* Congress, in enacting the FAA, intended "to overturn this rule and to require the courts to treat agreements to arbitrate like any other contract. The statute simply 'make[s] valid and enforceable agreements for arbitration contained in contracts involving interstate commerce . . . or which may be the subject of litigation in the federal courts.' " *Id.* (quoting H.R. Rep. No. 96, 68th Cong., 1st Sess. 1 (1924)). In short, concluded Judge Davis, Congress simply said that, if the federal court would exercise jurisdiction over the dispute in the absence of the arbitration clause, the statute now gives it the authority, and the obligation, to enforce that arbitration clause.[1] Section 4 simply instructed the district courts not to refuse to enforce arbitration clauses in cases *otherwise properly before them*.

Notably, this legislative mandate did not instruct the district courts to take a different approach to assessing jurisdiction in Section 4 cases than they undertake in any other case. More precisely, there is no basis for concluding that the district court should look to any source other than the petition in order to determine whether the requisite jurisdictional amount has been met. *See Gully v. First Nat'l*

---

[1] The *Prudential-Bache* analysis was largely drawn from *Drexel Burnham Lambert, Inc. v. Valenzuela Bock*, 696 F. Supp. 957 (S.D.N.Y. 1988). *Drexel* also explained two other reasons why it is doubtful that Section 4 was intended to confer federal court jurisdiction or establish the kind of federal right that entails federal jurisdiction under 28 U.S.C. § 1331: (1) there is no reason why Congress would have such a jurisdictional principle in Section 4, but not apply the same principle to other sections of the FAA, like Section 7 (authorizing the "United States court" to compel the attendance of witnesses), and (2) there is no evidence Congress intended to carve out an exception to the well-pleaded complaint rule. *See id.* at 962-65.

*Bank*, 299 U.S. 109, 113 (1936) (A "complaint itself will not avail as a basis of jurisdiction in so far as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense."). It is not appropriate to look beyond the petition to determine whether the "underlying dispute" meets the jurisdictional amount. Indeed, in *We Care Hair*, we held that "controversy between the parties" in Section 4 meant the controversy between the parties to the petition to compel arbitration, not the controversy between the parties to the state court action. 180 F.3d at 842. The relevant inquiry is the petition to compel arbitration itself, not the underlying controversy. We perceived no indication that Section 4 had altered in any way the rule that federal courts look only to the well-pleaded complaint before them in determining their jurisdiction. We therefore turn to an examination of the petition to ascertain whether it reveals that the requisite amount is at stake and that the jurisdiction of the district court therefore is invoked properly.

MoneyLine takes the view that the real controversy presented by its petition is, in essence, the issue of where, when and how Ms. Coleman's claim will be adjudicated: Will it be decided in a class action in state court or in an arbitration with Ms. Coleman? MoneyLine submits that its request to the district court is that the court order Ms. Coleman to submit to arbitration rather than proceed with her suit in state court. This request, MoneyLine submits, is a request for equitable relief because it seeks the "equitable remedy" of enforcing a contractual right—the right to arbitrate. Thus, it is in substance no different from any other request for an injunction or declaratory judgment. In suits seeking the equitable remedies of an injunction or a declaratory judgment, the amount in controversy is determined by the value to the plaintiff (or petitioner) of the object of the litigation. *See Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). MoneyLine contends that the object

of this Section 4 litigation is to compel arbitration; the value of this litigation is the value of enforcing the Arbitration Rider and avoiding class litigation in the state court. As a practical matter, obtaining such an order would permit MoneyLine to avoid financing an expensive class action in state court and, instead, to arbitrate individually Ms. Coleman's claim. It points out that proceeding with the arbitration would save it significant costs, including lost productivity and compensation for employees assisting counsel. This amount, submits MoneyLine, has the potential to exceed $75,000.

In urging us to accept its theory on the appropriate measure of a possible recovery, MoneyLine asks us to reject the settled law of this circuit and of the other circuits. We have adhered to the rule that the value of the object of the litigation is the "pecuniary result" that would flow to the plaintiff (or defendant) from the court's granting the injunction or declaratory judgment. *See McCarty v. Amoco Pipeline Co.*, 595 F.2d 389, 393 (7th Cir. 1979). In the context of actions to compel arbitration, we have adhered to the rule that, in order to ascertain whether the jurisdictional amount for the diversity statute has been met, the appropriate focus is the stakes of the underlying arbitration dispute. *American Bankers Life Assurance Co. v. Evans*, 319 F.3d 907 (7th Cir. 2003), is illustrative of the approach that we have taken. In that case, Evans, alleging violations of Illinois state law, sued American, among others, in an Illinois state court. American responded by filing a petition to compel arbitration in the United States District Court for the Southern District of Illinois. It asked that the court order the parties to submit to arbitration as required by the agreement between the parties. *Id.* at 908. The parties were completely diverse; the only question therefore was the amount in controversy. The court said the amount in controversy was the amount that would be at stake in the arbitration of the underlying

dispute; thus, the question was whether "the stakes of an arbitration of Evans's claim would exceed $75,000." *Id.* The court then set out to determine the maximum award that the arbitrator could award Evans. Finding there was no possible way by which the arbitrator could award $75,000, the court found jurisdiction lacking. *Id.* at 909-10. We reached the same result in *We Care Hair.* 180 F.3d at 841 ("[S]ince the present suit is . . . an independent federal suit, it is the stakes of the arbitration . . . that control[s]."). Indeed, in *Barbers, Hairstyling for Men & Women, Inc. v. Bishop,* 132 F.3d 1203 (7th Cir. 1997), we assumed without further discussion that the stakes of the arbitration was the proper measure. *Id.* at 1205-06. Moreover, the approach that we have taken in this matter is the approach followed by the other federal courts. *See* 13B Charles Alan Wright et al., *Federal Practice & Procedure: Jurisdiction* § 3569, at 172-73 (2d ed. 1984) ("[T]he amount is measured by the possible award that might reasonably result from an arbitration.").

MoneyLine attempts to deal with this settled rule by suggesting that, even though the "stakes of the arbitration" test is one test, even the most common one, for valuing the amount in controversy, it is not the only test. As MoneyLine points out, we have said that, in determining the amount in controversy in an equitable action, we may look at the stakes either from the point of view of the plaintiff or the defendant. *See BEM I, L.L.C. v. Anthropologie, Inc.,* 301 F.3d 548, 553 (7th Cir. 2002) (The amount in controversy "is the amount at stake to either party to the suit.").

To accept MoneyLine's view, it is necessary to accept as well its premise that this federal action has the singular procedural perspective of seeking simply to determine where, when and how the dispute will be adjudicated. We cannot accept this position. As our colleagues in the Second Circuit have explained, " 'the petition to compel arbitration

is only the initial step in a litigation which seeks as its goal a judgment affirming the award.' " *Doctor's Assocs., Inc. v. Hamilton*, 150 F.3d 157, 160 (2d Cir. 1998) (quoting *Davenport v. Procter & Gamble Mfg. Co.*, 241 F.2d 511, 514 (2d Cir. 1957)). Therefore, the stakes of the arbitration are the ultimate amount in controversy.

It is clear that an arbitrator could not award an amount in excess of $75,000 to reimburse Ms. Coleman for the $30 courier fee that she incurred at closing. Accordingly, the jurisdictional amount is not in controversy, and the district court correctly determined that it was without jurisdiction in this matter.

## Conclusion

Accordingly, the judgment of the district court is affirmed.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*

USCA-02-C-0072—3-15-04