# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 06-1053 & 06-1837

STATE OF WISCONSIN,

*Plaintiff-Appellee*,
*Cross-Appellant*,

*v.*

HO-CHUNK NATION,

*Defendant-Appellant,*
*Cross-Appellee.*

_____

Appeals from the United States District Court
for the Western District of Wisconsin.
No. 05 C 632—**John C. Shabaz**, *Judge.*

_____

ARGUED JUNE 1, 2006—DECIDED SEPTEMBER 11, 2006

_____

Before FLAUM, *Chief Judge*, and MANION and WILLIAMS,
*Circuit Judges.*

MANION, *Circuit Judge.* The State of Wisconsin and
the Ho-Chunk Nation entered into a compact enabling the
Ho-Chunk Nation to conduct certain gaming activities on its
lands in exchange for making payments to Wisconsin. After
a disagreement arose, Wisconsin sued the Ho-Chunk Nation
to compel arbitration and to appoint an arbitrator. The
district court exercised jurisdiction and appointed
an arbitrator. The Ho-Chunk Nation appealed from that

order, arguing that the court lacked subject matter juris-
diction and that Wisconsin's complaint failed to state a
claim under the Federal Arbitration Act. Wisconsin later
filed a motion seeking a substitute arbitrator, arguing that
the original arbitrator had a conflict of interest. The dis-
trict court denied the motion and Wisconsin appealed.
We conclude that no subject matter jurisdiction exists
over the complaint. We also conclude that the Ho-Chunk
Nation is not entitled to sanctions or double costs for
Wisconsin's allegedly frivolous appeal that Wisconsin
voluntarily moved to dismiss before the completion of
briefing.

## I.

In 1992, the State of Wisconsin entered into a compact
with the Wisconsin Winnebago Tribe, which is now known
as the Ho-Chunk Nation ("the Nation"). The compact
authorized the Nation to conduct on its lands various "Class
III games" such as slot machines and blackjack, regulated
the gaming, and provided that the Nation would pay
Wisconsin's costs of regulation. The compact was amended
first in 1998 and, relevant to this case, again in 2003. The
second amended compact expanded the permitted casino
games to the full panoply of Las Vegas-style gaming,
including poker, roulette, keno, and craps. In exchange, the
Nation agreed to pay Wisconsin 30 million dollars in 2004
and 2005, and, in subsequent years, a percentage of the
Nation's net winnings decreasing incrementally from eight
to six percent in years 2006 to 2010. After that, the parties
agreed to payments of six percent "continuing in perpetu-
ity." The second amended compact established a perpetual
duration for the compact, with the possibility of renegotiat-
ing terms every twenty-five years. It also waived sovereign

immunity, and provided for dispute resolution through binding arbitration.

The second amended compact was executed on April 25, 2003, and submitted to the Secretary of the Interior for approval. The compact went into effect 45 days later, after the Secretary took no action to approve or disapprove of the compact. 25 U.S.C. § 2710(d)(8)(C). Just before the first thirty million dollar payment was due, the Supreme Court of Wisconsin issued a decision addressing compact provisions similar to those in the second amended compact. *Panzer v. Doyle*, 680 N.W.2d 666 (Wis. 2004), *abrogated in part by Dairyland Greyhound Park, Inc. v. Doyle*, 719 N.W. 2d 408 (Wis. 2006). The *Panzer* decision addressed a compact between Wisconsin and the Forest County Potawatomi which, like the compact at issue here, provided that the agreement would endure in perpetuity and waived Wisconsin's sovereign immunity. Although the Nation was not a party in the *Panzer* case, the Nation, along with other tribes, submitted an amici curiae brief supporting the validity of the compacts. Ruling against the position of the tribes, the Supreme Court of Wisconsin held that the Governor of Wisconsin lacked the authority to enter into a perpetual compact, to waive Wisconsin's sovereign immunity, or to agree to certain games that violate the Wisconsin constitution and criminal code. *Id.* at 701.

Although the Nation's own compact was not directly invalidated by the *Panzer* case, the Nation's second amendment to the compact contained terms similar to those in the Potawatomi compact at issue in *Panzer*. Following the *Panzer* decision, the Nation ceased offering the offending games, withheld payments to Wisconsin, and sought to renegotiate the relevant compact provisions. After failing to negotiate a resolution, the Nation submitted a complaint in

arbitration, in accordance with the compact, on June 23, 2005. The arbitration complaint alleged breaches of contract and breaches of good faith and fair dealing.

The parties then sought a mutually acceptable arbitrator, a contentious process that culminated in the present litigation. After striking each other's proposed arbitrators, the parties withdrew the strikes and agreed to appoint one arbitrator each, who together would select an arbitrator to conduct the binding arbitration.[1] The two arbitrators conferred without success. The Nation's arbitrator suggested that they continue to negotiate until November 15, 2005, and that if an agreement were not reached by that date, then both parties could jointly petition the district court for the appointment of an arbitrator. Before that date, Wisconsin filed a complaint in the Western District of Wisconsin, along with a motion to compel arbitration and to appoint an arbitrator. The Nation filed a motion to dismiss the complaint for lack of jurisdiction, which also argued that the Federal Arbitration Act ("FAA") does not apply to Indian tribes or Indian commerce and that the motion to compel lacked merit since no lapse in the negotiations occurred.

The district court determined that it had jurisdiction, that the FAA applied, and that a lapse in the arbitration process had occurred. Then, choosing from arbitrators proposed by both parties, the district court selected the Honorable William A. Norris, a retired federal judge, to conduct the arbitration. In the opinion of the district court, Judge Norris, one of the Nation's proposed arbitrators, had no

---

[1] We note that the parties appear to dispute whether the compact provides for arbitration before a single arbitrator or before a panel of three arbitrators. We express no opinion on this issue.

conflict of interest or bias and had "considerable and meaningful experience in both gaming and Indian law," as was required by the compact. Having ordered arbitration, the district court dismissed Wisconsin's action without prejudice, permitting the "immediate reopening upon motion of either party where all issues have not been resolved by arbitration." The Nation filed a notice of appeal, seeking to challenge the district court's denial of its motion to dismiss, but not the appointment of Judge Norris.

As the parties prepared for arbitration, Wisconsin learned that Judge Norris's law firm, Akin Gump, had represented several Indian tribes in compact negotiations and potentially would do so again in the future. Wisconsin considered this a conflict of interest and accordingly filed a motion before the district court requesting the reopening of the case for the substitution of an arbitrator without conflicts. The district court denied the motion, although it noted that it may lack jurisdiction over the motion because of the pending appeal. Wisconsin filed a notice of appeal from that order, which was docketed as appeal 06-1837. We consolidated the two appeals.

Less than two weeks after Wisconsin filed its opening appellate brief in appeal 06-1837, and about one week before the Nation's response brief was due, Wisconsin notified the Nation that it was willing to dismiss its appeal voluntarily. The next day, without having heard whether the Nation agreed, Wisconsin mailed to the court a motion to dismiss the appeal voluntarily, which was filed the following day. We requested a response from the Nation. The Nation responded that it supported Wisconsin's motion, but requested sanctions. Since the parties disagreed about the costs, we denied the motion to dismiss. *See* Fed. R. App. P. 42(b) ("The circuit clerk may dismiss a docketed appeal if

the parties file a signed dismissal agreement specifying how costs are to be paid and pay any fees that are due."). Even though the parties agreed that Wisconsin's appeal would not proceed on the merits, we directed the Nation to file a motion for sanctions, which remains for our adjudication. Thus, before the court are both the Nation's appeal and the sanctions issue presented in Wisconsin's appeal.

## II.

The Nation argues on appeal that the district court lacked subject matter jurisdiction over this case and that the FAA does not apply to Indian tribes or Indian commerce. We begin with the jurisdictional issue, a question of law that we review de novo. *America's Moneyline, Inc. v. Coleman*, 360 F.3d 782, 784 (7th Cir. 2004). To determine whether subject matter jurisdiction exists, we look first to the complaint filed by Wisconsin because "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citation omitted). Wisconsin claims that subject matter jurisdiction exists because the case arises from federal law. 28 U.S.C. § 1331. To arise under federal law, the law must " 'create[ ] the cause of action.' " *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 850-51 (1985) (quoting *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916)). In the complaint, the State brings exactly one cause of action: it seeks an order compelling arbitration under the FAA. The complaint also states that the parties negotiated the compact that provides for arbitration pursuant to the Indian Gaming Regulatory Act of 1988 ("IGRA") and lists IGRA as a basis for jurisdiction. As we explain below, neither the FAA nor the IGRA creates

a cause of action that confers subject matter jurisdiction over this dispute.

The FAA by itself does not provide subject matter jurisdiction for any dispute; as a result, "there must be diversity of citizenship or some other independent basis for federal jurisdiction" to address an arbitration dispute. *America's Moneyline*, 360 F.3d at 784 (internal quotation and citation omitted); 9 U.S.C. § 4 (allowing claims for arbitration to be brought in "any United States district court which, save for such [arbitration] agreement, would have jurisdiction under Title 28" over the controversy). Thus, a federal court may issue "an order compelling arbitration only when the federal district court would have jurisdiction over a suit on the underlying dispute." *America's Moneyline*, 360 F.3d at 784; *see also Wise v. Wachovia Sec., L.L.C.*, 450 F.3d 265, 266 (7th Cir. 2006) (noting that the FAA "confers federal jurisdiction in cases involving arbitration only of disputes that, were they litigated rather than arbitrated, would be within federal jurisdiction" (citations omitted)). We note, however, that this circuit has recognized that "[a] strong body of caselaw has developed . . . holding that the nature of the underlying dispute [in arbitration] is irrelevant for purposes of subject matter jurisdiction, even on a motion to compel [arbitration] . . . the motion itself must involve diversity or federal question jurisdiction." *Minor v. Prudential Sec., Inc.*, 94 F.3d 1103, 1106 (7th Cir. 1996) (collecting cases); *see also Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 27-28 (2d Cir. 2000) (noting that "the simple presence of federal claims in the arbitration itself [is] insufficient as an independent basis for federal jurisdiction," but exercising jurisdiction because the complaint alleged "manifest disregard of the federal laws"). Thus, we do not look to the Nation's underlying complaint in arbitration, but confine our analysis to the federal claims articulated in Wiscon-

sin's complaint before the district court. Since the FAA does not provide an independent basis for jurisdiction, we examine Wisconsin's other proffered basis for jurisdiction in its complaint: the IGRA.

The IGRA confers jurisdiction on the district court in three instances: (1) for "any cause of action initiated by an Indian tribe arising from the failure of a State to enter into negotiations with the Indian tribe . . . or to conduct such negotiations in good faith," (2) for "any cause of action initiated by a State or Indian tribe to enjoin a class III gaming activity located on Indian lands and conducted in violation of any Tribal-State compact," or (3) for "any cause of action initiated by the Secretary to enforce the procedures" prescribed in the IGRA. 25 U.S.C. § 2710(d)(7)(A)(i)-(iii). This case does not fall within any of these three options: the Nation did not initiate the case, neither the State nor the Nation seeks to enjoin class III gaming, nor did the Secretary initiate the action. Thus, this case is outside of the jurisdictional grant in the plain language of the IGRA. *Id.*

Nonetheless, Wisconsin argues that this case arises out of a compact, and since a compact is a creation of federal law and since IGRA governs the scope of the compact, Wisconsin claims that this case arises under federal law. Thus, even without reliance on the Nation's complaint in arbitration, Wisconsin argues that its complaint sets forth a federal question. Wisconsin cites to several cases, each of which presents causes of action distinguishable from the single cause of action to compel arbitration brought in this case. Wisconsin first relies on *Forest County Potawatomi Community of Wisconsin v. Norquist*, 45 F.3d 1079 (7th Cir. 1995), to support its jurisdictional argument. In *Norquist*, a lawsuit initiated by a tribe, this court exercised jurisdiction based on the tribe's "federal right" to operate its gaming

"free from state or city interference." *Norquist*, 45 F.3d at 1082. In contrast, this case is not brought by a tribe complaining of state interference. Instead, Wisconsin brings a suit to compel arbitration that does not present a claim regarding a federal right. Wisconsin also relies on *Cabazon Band of Mission Indians v. Wilson*, 124 F.3d 1050 (9th Cir. 1997). *Cabazon*, however, concerned a claim brought by tribes "to enforce the Compacts" and to enforce a prior federal court ruling allowing certain tribes "to recover money taken by the State in violation of federal law." *Cabazon*, 124 F.3d at 1056. While the Ninth Circuit cautions against construing federal question jurisdiction and the IGRA "too narrowly," *id.*, Wisconsin's complaint in this case does not ask the federal court to resolve a breach of or to enforce a tribal compact. Finally, Wisconsin submits language from a footnote of the Eleventh Circuit's case in *Tamiami Partners, Limited v. Miccosukee Tribe of Indians of Florida*, 177 F.3d 1212, 1223 n.11 (11th Cir. 1993), to suggest that the court " 'look through' [the plaintiff's] arbitration request at the underlying [ ] dispute in order to determine whether [the plaintiff's] complaint states a federal question." As discussed above, we do not look through to the underlying complaint in arbitration to ascertain whether subject matter jurisdiction obtains. *See Minor*, 94 F.3d at 1106. Regardless, in *Tamiami*, the Eleventh Circuit clarified in another footnote that "a licensing dispute," specifically whether the tribe breached an obligation in rejecting gaming license applications, "provides a basis for exercising federal question jurisdiction over" the complaint. 177 F.3d at 1223 n.12. That case, in its third visit to the Eleventh Circuit, presented causes of action concerning the scope of the tribe's authority and "rel[ied] on certain provisions of IGRA." *Id.* at 1222. The Eleventh Circuit even described *Tamiami* as "more than a mere dispute concerning a contract or an agreement to arbitrate." *Id.* at 1222.

In this case, Wisconsin's complaint simply requests that the court compel arbitration over this controversy that "arises from and concerns a gaming compact negotiated pursuant to" the IGRA. While Wisconsin claims that an interpretation of the IGRA will be required in arbitration, this is not clear from its complaint, and even if it were, the underlying matter may not be sufficient to provide jurisdiction. *See Minor*, 94 F.3d at 1106. If a similar controversy over the appointment of an arbitrator arose from a contract between two Wisconsin corporations, the district court would not have subject matter jurisdiction over the case unless the complaint in district court somehow alleged a federal question. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 n.32 (1983) (noting that the FAA "is something of an anomaly in the field of federal-court jurisdiction" since "it does not create any independent federal-question jurisdiction" and requires either diversity jurisdiction or some other basis for federal jurisdiction in order for the federal court to address the case). The question here is: since the IGRA enables and regulates contracts between tribes and the states, does any dispute arising from the resulting compact present a question under the IGRA? We think not. The connection to federal law set forth in Wisconsin's complaint is tangential: Wisconsin's complaint is based on an arbitration clause that happens to be contained in a compact between a state and a tribe. The complaint does not present the district court with any claim for a violation of the IGRA, require an interpretation of the IGRA, encompass any of the situations for which the IGRA confers jurisdiction, or even require the district court to address a breach of the compact that was formed pursuant to the IGRA. Wisconsin's complaint simply requests that the district court compel arbitration. Without more, and without incorporating the Nation's underlying complaint in arbitra-

tion, this complaint does not present a federal question over which the court has jurisdiction.

Wisconsin also argues that the compact provides for jurisdiction in the Western District of Wisconsin. Specifically, Wisconsin points to language in the compact stating that "[a]ny action to compel arbitration, determine whether an issue is arbitrable or to confirm an award entered by the arbitrator shall be brought in the United States District Court for the Western District of Wisconsin under the Federal Arbitration Act . . . ." It is, however, axiomatic that "[n]o court may decide a case without subject matter jurisdiction, and neither the parties nor their lawyers may stipulate to jurisdiction or waive arguments that the court lacks jurisdiction." *United States v. Tittjung*, 235 F.3d 330, 335 (7th Cir. 2000) (citations omitted). An Indian tribe's waiver of its sovereign immunity to subject itself to suit does not change this requirement. The provisions in the compact do not alter our determination that Wisconsin's complaint does not provide for subject matter jurisdiction over its cause of action. Similarly, our analysis cannot be affected by the availability or unavailability of another forum for this dispute.

In determining that Wisconsin's complaint fails to provide a basis for subject matter jurisdiction, we do not hold that these facts are impervious to jurisdiction. We express no opinion as to whether either party could craft a complaint that states a federal question in this situation or whether Wisconsin should be permitted to amend its complaint on remand before the district court. Accordingly, we remand to the district court with instruction to dismiss the case for lack of subject matter jurisdiction.

The Nation further argues that the FAA does not apply to the case, essentially arguing that Wisconsin fails to state a

claim under the FAA because the FAA does not encompass a case that involves, according to the Nation, only Indian commerce, rather than interstate or foreign commerce. Because subject matter jurisdiction over this case is absent, we will not reach the issue of whether the FAA applies to this situation.

### III.

We next address the Nation's motion for sanctions in Wisconsin's appeal. The Nation requests sanctions based on Federal Rule of Appellate Procedure 38, which states that "[i]f a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." A "frivolous" appeal is one in which " 'the result is obvious or when the appellant's argument is wholly without merit.' " *Ins. Co. of the W. v. County of McHenry*, 328 F.3d 926, 929 (7th Cir. 2003) (quoting *Grove Fresh Distribs. v. John Labatt, Ltd.*, 299 F.3d 635, 642 (7th Cir. 2002)). Frivolity "depends on the work product: neither the lawyer's state of mind nor the preparation behind the appeal matter." *Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928, 938 (7th Cir. 1989) (en banc). This court has found appeals that "rehash[ ] positions that the district court properly rejected," or that "present[ ] arguments that are lacking in substance and foreordained to lose" to be frivolous. *Berwick Grain Co. v. Ill. Dep't of Agric.*, 217 F.3d 502, 505 (7th Cir. 2000) (citations and internal quotation omitted). Whether to impose sanctions for a frivolous appeal "is within the sound discretion of this court." *Ins. Co. of the W.*, 328 F.3d at 929 (citing *Grove Fresh Distribs.*, 299 F.3d at 642). Even if an appeal is frivolous, Rule 38 by its use of the permissive "may," "allows the

court of appeals to decline to impose sanctions." *Mars Steel Corp.*, 880 F.2d 928, 938 (citation omitted).

We need not determine whether Wisconsin's appeal is frivolous, because even if it were frivolous, sanctions are not appropriate in this case. In *Ormsby Motors Incorporated v. General Motors Corporation*, 32 F.3d 240, 241 (7th Cir. 1994), we considered an appeal in which, after the opening briefs were filed by both the appellant and appellee, the appellant moved to voluntarily dismiss the appeal in lieu of filing a reply brief. The appellee moved for sanctions. We declined to award sanctions and stated that "only in an exceptional case would we be inclined to grant such relief." *Ormsby Motors, Inc.*, 32 F.3d at 241. We explained: "We do not want to discourage voluntary dismissals, which save the time not only of appellees but of this court, by a readiness to grant sanctions." *Id.* In this case, Wisconsin notified the Nation of its willingness to dismiss the appeal before the filing of the Nation's opening brief, in contrast to *Ormsby* in which the appellee had already filed its brief. Although the Nation had understandably already expended efforts in the drafting of its brief when it received notice from Wisconsin, the notice and the filing of the motion for voluntary dismissal weigh against sanctions. We do not find that Wisconsin acted in bad faith. In sum, we do not find extraordinary circumstances that would warrant the imposition of sanctions after the filing of a motion to dismiss the appeal voluntarily.

## IV.

Because subject matter jurisdiction is lacking, we VACATE the district court's opinion denying the Nation's motion to dismiss and REMAND to the district court with instruc-

tions to dismiss the case for want of jurisdiction. We also DISMISS appeal number 06-1837 pursuant to Rule 42(b), and DENY the Nation's motion for sanctions and double costs.

A true Copy:

       Teste:

                    _____
                    *Clerk of the United States Court of*
                    *Appeals for the Seventh Circuit*