In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-3370

WILHEMINA C. MCMILLIAN, LILLIE
TUCKER, CLARENCE PENNYWELL, et al.,

*Plaintiffs-Appellants*,

*v.*

SHERATON CHICAGO HOTEL & TOWERS,
OTIS ELEVATOR COMPANY and TISHMAN HOTEL
COMPANY,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 5118—**Jeffrey N. Cole**, *Magistrate Judge*.

ARGUED OCTOBER 30, 2008—DECIDED MAY 29, 2009

Before EASTERBROOK, *Chief Judge*, and RIPPLE and
TINDER, *Circuit Judges*.

RIPPLE, *Circuit Judge*.    The plaintiffs, Wilhemina
McMillian, Lillie Tucker, Clarence Pennywell and Zerline
Pennywell, brought this action seeking damages for
injuries that they sustained when an escalator, located

in the Sheraton Chicago Hotel & Towers ("Sheraton")[1] and maintained by Otis Elevator Company ("Otis"), allegedly malfunctioned. Prior to trial, the district court granted the defendants' motion in limine to exclude evidence of injuries sustained by others on the escalators at the Sheraton. The plaintiffs admitted that, without this evidence, they could not survive a motion for judgment as a matter of law, and, therefore, they agreed to a dismissal of their claims. The district court then entered final judgment on behalf of the defendants, and the plaintiffs filed this appeal. Because we believe that the plaintiffs have failed to establish that their claims meet the threshold jurisdictional amount, we vacate the judgment of the district court and remand the case with instructions that the district court dismiss the action for want of subject matter jurisdiction.

# I

# BACKGROUND

## A.  Facts

Wilhemina McMillian, Lillie Tucker, Clarence Pennywell and Zerline Pennywell were guests at the Sheraton. On September 2, 2003, the Pennywells were riding escalator 12 when it "jerked," R.57 at 1; the malfunction caused Mr. Pennywell to fall and suffer a separated shoulder

---

[1] Tishman Hotel Corporation ("Tishman") partially owns the Sheraton Chicago Hotel & Towers and, consequently, was included as a defendant in this action.

and a laceration to the scalp.[2] Ms. Pennywell did not fall and did not suffer any physical injuries. On September 4, 2003, Ms. McMillian and Ms. Tucker were riding escalator 8 when that escalator "jerked." R.57 at 1. As a result, Ms. McMillian fell and incurred a laceration to her leg and a sprained knee; Ms. Tucker suffered a meniscus tear in her knee, which did not require surgery.[3]

## B. District Court Proceedings

The plaintiffs brought this diversity action against Sheraton, Tishman and Otis, seeking to recover damages for the injuries they sustained while riding the Sheraton escalators. Sheraton and Tishman later filed a cross-claim against Otis for indemnification and contribution based on a maintenance agreement in effect at the time of the plaintiffs' injuries. During discovery, the plaintiffs sought information about other escalator malfunctions; in response, Sheraton produced two incident reports. The first of these incidents occurred on September 1, 2003, when a guest, Mary Kemper, fell while riding either escalator 5 or 7; according to the report, Kemper was riding on the escalator when it suddenly stopped, and she tripped and fell. The other incident occurred on September 2, 2003; on that day, Carrie Redd fell while

---

[2] *See* Defendants' Supplemental Jurisdictional Memorandum at 7.

[3] *See* Defendants' Supplemental Jurisdictional Memorandum at 7.

she was riding on escalator 7. According to witnesses, Redd did not properly put her foot on the escalator step and lost her balance.

Prior to trial, Otis moved in limine to exclude "any evidence of accidents which occurred on an escalator other than the subject escalators prior to the date of plaintiffs' accidents." R.57 at 5. Relying on *Davlan v. Otis Elevator Co.*, 816 F.2d 287 (7th Cir. 1987), the district court granted the motion. Following this ruling, the Pennywells made an "oral motion to dismiss defendant Otis Elevator Company from [their] case with prejudice." R.78.

The district court subsequently allowed Sheraton and Tishman to adopt the motion in limine previously filed by Otis, thus preventing the plaintiffs from introducing evidence of other accidents against Sheraton and Tishman.[4] In its final-judgment order, the district court recounted the parties' actions and its rulings following the grant of the motion in limine:

> 6. The Pennywells' counsel announced that without the excluded evidence, he did not believe that he could survive a Motion For Judgment As a Matter of Law. Based on the above pre-trial rulings, and without prejudice to the parties' right to appeal those rulings, Clarence Pennywell, Zerline Pennywell, Sheraton and Tishman agreed that final judgment

---

[4] The district court also granted the defendants' motion to sever the plaintiffs' claims for trial. Specifically, the Pennywells' claims were to be tried separately from those of Ms. Tucker and Ms. McMillian.

should be entered in favor of Sheraton and Tishman and against Clarence Pennywell and Zerline Pennywell on their claims. Initially, the remaining plaintiffs did not agree to pursue that course.

7. On May 15, 2007, I granted the joint motion of Sheraton Chicago Hotel & Towers and Tishman Hotel Company and Clarence Pennywell and Zerline Pennywell for entry of a Stipulated Order of Final Judgment on their claims. . . .

8. On August 8, 2007, I held a status conference at which it was agreed by counsel for Ms. Tucker and Ms. McMillian that the evidentiary sufficiency of their case was dependent upon admissibility of the separate, earlier incidents that allegedly resulted in injury to the Pennywells. Although I thought my earlier ruling barring evidence of other incidents in the Pennywell trial pursuant to *Davlan v. Otis Elevator Company*, *supra*, also barred introduction in the Tucker/McMillian trial of the separate alleged injuries to the Pennywells, I ruled from the bench that the Pennywell ruling applied equally to the claims of McMillian and Tucker.

9. In a telephone conference with all counsel on 8/10/07, Mr. King, who is counsel for all the plaintiffs, then agreed that the case of Ms. McMillian and Ms. Tucker against Sheraton and Tishman could not survive a motion for judgment as a matter of law without the evidence of the earlier Pennywell incident, which occurred on a separate escalator.

9.[sic] All three counts of the cross-claim of Sheraton Hotels against Otis are dependent upon a verdict favorable to the plaintiffs. . . .

10. A final judgment in favor of Tishman Hotel Corporation and Sheraton Chicago Hotel & Towers and against all plaintiffs on all counts of the complaint against them also resolves the cross-claim of Sheraton Chicago Hotel & Towers against Otis Elevator Company.

11. Accordingly, with the agreement of the parties, I direct the entry of final judgment in favor of Sheraton Chicago Hotel & Towers, Tishman Hotel Corporation, and Otis Elevator Company on the claims of all plaintiffs against them, and I direct the entry of final judgment in favor of Otis Elevator Company and against Sheraton Chicago Hotel & Towers on its cross-claim against Otis Elevator Company.

R.109 at 2-4.

## II

### DISCUSSION

The plaintiffs raise the single issue of whether the district court abused its discretion in excluding the evidence of other escalator accidents. However, during oral argument, we became concerned that the consensual nature of the district court's judgment may have deprived us of jurisdiction to consider the plaintiffs' appeal. We

also had concerns that the jurisdictional amount in controversy had not been satisfied.[5] We asked the parties to file supplemental memoranda addressing these issues. We turn first to these jurisdictional matters.

## A.

In a case of this nature, our appellate jurisdiction must be predicated on a final judgment in the district court. *See* 28 U.S.C. § 1291 ("The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . ."). A final judgment, for purposes of section 1291, is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978).[6] In addition to a final

---

[5] Because the plaintiffs invoked the district court's diversity jurisdiction, "the matter in controversy" must "exceed[] the sum or value of $75,000." 28 U.S.C. § 1332.

[6] We have explained the rationale behind the final-judgment rule accordingly:

> The final judgment rule promotes judicial efficiency, as some issues a party seeks to appeal before a final decision may be mooted when the case is finally determined on the merits. Furthermore, the rule helps to avoid piecemeal appeals that may threaten the independence of trial judges and prevents the potential harassment and cost that a series of separate appeals from various individual rulings could create.

(continued...)

disposition in the district court, there also must be a continuing, live controversy between the parties for us to resolve on appeal. *Timms on Behalf of Timms v. Metro. Sch. Dist. of Wabash County, Ind.*, 722 F.2d 1310, 1315 (7th Cir. 1983) ("It is settled that our jurisdiction requires 'an actual controversy . . . to exist at all stages of appellate review.'" (quoting *Cent. Soya Co. v. Consol. Rail Corp.*, 614 F.2d 684, 687 (7th Cir. 1980))).

We believe that the record makes clear that the district court's dismissal of the plaintiffs' claims anticipated no further proceedings and put an end to all matters before the court. As recounted in the district court's order, the Pennywells moved to dismiss their claims against Otis with prejudice following the district court's grant of Otis' motion in limine with respect to other escalator incidents. After the district court extended this ruling to bar similar evidence against Sheraton and Tishman, the Pennywells, and later Ms. Tucker and Ms. McMillian, agreed that they could not survive a motion for judgment as a matter of law. Consequently, the court dismissed all of the remaining claims and entered final judgment on behalf of the defendants. Although the last order of the court does not use the terms "with prejudice" explicitly, it is clear that the parties' desire to end the litigation was based on the extension of the evidentiary ruling which first prompted the Pennywells to move to dismiss Otis

---

[6] (...continued)
*ITOFCA, Inc. v. Mega Trans Logistics, Inc.*, 235 F.3d 360, 364 n.1 (7th Cir. 2000) (citations omitted).

"with prejudice." This is sufficient to create a final judgment for purposes of section 1291. *See Mother & Father v. Cassidy*, 338 F.3d 704, 707 (7th Cir. 2003) (stating that, when the parties "do not seriously contest the fact that the district court has dismissed all claims of all parties, and that the federal claims have now been dismissed with prejudice[,] [t]hat is enough to create a final judgment for purposes of appellate jurisdiction under 28 U.S.C. § 1291"). Thus, the district court's judgment is final.

The district court's final order not only makes clear that the disposition was final, but also leaves no doubt that the disposition was consensual. We previously have observed that "[o]ne might think . . . that if a judgment is not contested in the district court then the adversarial process has ended and the court of appeals has no role to play." *Downey v. State Farm Fire & Cas. Co.*, 266 F.3d 675, 682 (7th Cir. 2001). However, matters are not always that simple. In *Downey*, we faced a situation, similar to the present one, in which the parties had agreed to entry of judgment. Regarding the jurisdictional issue, we stated:

> [F]or jurisdictional purposes there is no distinction between "consent" and "adversarial" judgments. Judgments are judgments, and any party can appeal as of right from a final decision adverse to his interests. So says 28 U.S.C. § 1291, which allows appeal from "all final decisions of the district courts". Finality is the necessary and sufficient condition. Distinguishing between final judgments entered with the consent of both parties and final judgments entered against one party's wishes would create an ex-

tra-statutory condition on appeal. This has little to recommend it, and the possibility has been rejected by the Supreme Court. *See Pacific R.R. v. Ketchum,* 101 U.S. 289, 295, 25 L.Ed. 932 (1880). . . .

State Farm is not home free, however. Although the Supreme Court has held that "consent judgments" are final and appealable under § 1291 (so appellate jurisdiction is secure) the Court has added that the act of giving consent usually waives the consenting party's right to review, leading to affirmance "without considering the merits of the cause." *Nashville, Chattanooga & St. Louis Ry. v. United States,* 113 U.S. 261, 266, 5 S. Ct. 460, 28 L.Ed. 971 (1885). . . . Waiver affects, not a court's power to hear the case, but whether as a practical matter it has any job to do. So did State Farm waive its right to appellate consideration? Both the Offer of Judgment and the district court's judgment reserved State Farm's right to challenge the liability determination. A reservation of rights is incompatible with waiver. *See Cutting v. Jerome Foods, Inc.,* 993 F.2d 1293 (7th Cir. 1993); *Hudson v. Chicago Teachers Union,* 922 F.2d 1306 (7th Cir. 1991). Almost every circuit that has considered the issue has held that an express reservation of the right to appeal avoids waiver of contested issues that had been resolved earlier in the litigation. . . . Only the fifth circuit gives no effect to an express reservation of appellate rights. *See Amstar Corp. v. Southern Pacific Transport Co.,* 607 F.2d 1100 (5th Cir. 1979). *Amstar,* however, offered no explanation of its holding and so gives us no

reason to doubt our own conclusion: State Farm preserved its rights, and we may reach the merits.

*Downey*, 266 F.3d at 682-83.

As in *Downey*, the plaintiffs clearly reserved their rights to appeal the district court's ruling on the motion in limine, and the district court's final order reflected that reservation of rights. *See* R.109 at 5. We therefore have appellate jurisdiction over the plaintiffs' appeal.

**B.**

There remains the question of whether the jurisdictional amount in controversy has been met. To meet the amount-in-controversy requirement, "the separate claims of multiple plaintiffs against a single defendant cannot be aggregated." *Clark v. State Farm Mut. Auto. Ins. Co.*, 473 F.3d 708, 711 (7th Cir. 2007). We therefore must look to the individual plaintiffs' claims to determine whether they exceed $75,000.

When the jurisdictional threshold is uncontested, we generally "will accept the plaintiff's good faith allegation of the amount in controversy unless it 'appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Rexford Rand Corp. v. Ancel,* 58 F.3d 1215, 1218 (7th Cir. 1995) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). However, "[w]here, as here, the defendant challenges the plaintiff's allegation of the amount in controversy, the plaintiff must support its assertion with 'competent proof.'" *Id.* (quoting *McNutt v. Gen. Motors Acceptance*

*Corp.*, 298 U.S. 178, 189 (1936)).[7] The plaintiff must prove the "jurisdictional facts by a preponderance of the evidence." *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006). To satisfy this burden, a party must do more than "point to the theoretical availability of certain categories of damages." *Am. Bankers Life Assur. of Florida v. Evans*, 319 F.3d 907, 909 (7th Cir. 2003).

We do not believe that the plaintiffs have met their burden. Each of the plaintiffs claims damages attributable to his or her physical injuries in amounts significantly less than the jurisdictional minimum: Ms. McMillian claims past medical expenses in the amount of $6,279.42; Ms. Tucker claims medical expenses in the amount of $9,798.08; Mr. Pennywell claims medical expenses in the amount of $9,400.36; and Ms. Pennywell claims no past medical expenses.[8] In their supplemental jurisdictional memorandum, the plaintiffs maintain that their claims

---

[7] There is no question that Otis challenged the plaintiffs' allegation concerning the amount in controversy before the district court and before us. *See* R.63 and Appellee's (Otis) Br. 1. The district court denied Otis' motion to dismiss for failure to meet the jurisdictional amount. *See* R.84. We review this jurisdictional matter de novo. *LM Ins. Corp. v. Spaulding Enters. Inc.*, 533 F.3d 542, 547 (7th Cir. 2008).

[8] The plaintiffs initially alleged medical expenses in the amounts of $14,000 (Ms. McMillian), $7,000 (Ms. Tucker), and $15,000 (Mr. Pennywell); however, the pre-trial order listed the more detailed amounts set forth above. *See* Defendants' (Sheraton & Tishman) Supplemental Jurisdictional Memorandum at 7.

for future medical expenses and pain and suffering account for the jurisdictional shortfall. However, none of the plaintiffs points to any "competent proof" that he or she could prove damages from these categories to recover a total amount of damages that would reach the jurisdictional threshold. They do not suggest that there is any documentary or testimonial evidence that would show the necessity for future medical treatment of their injuries. Nor do they submit factual examples of their post-accident experience or point us to cases in which the plaintiffs had suffered similar injuries, and the jury awarded pain and suffering damages in amounts that would satisfy the jurisdictional requirements here. *See De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993) (relying in part on amounts recovered by other plaintiffs, who had suffered similar injuries, to sustain federal jurisdiction).

Indeed, in their supplemental brief, the plaintiffs rest their entire argument concerning amount in controversy on the allegations contained in their complaint.[9] However, as we previously stated, when the amount in controversy is contested, the parties asserting federal jurisdiction must come forward with competent proof that they have satisfied the jurisdictional threshold and not

---

[9] *See* Plaintiffs' Supplemental Jurisdictional Memorandum at 10 ("They demanded judgment in the amount of $750,000, $500,000 and $1,000,000 respectively. They further alleged suffering severe bodily and emotional injuries proximately caused by the appellees' negligence. They sought damages for past, present and future medical expenses and pain and suffering." (citations omitted)).

simply point to the theoretical possibility of recovery for certain categories of damages. The plaintiffs have failed to meet this burden.[10]


## Conclusion

The judgment of the district court is vacated and the case is remanded with instructions to dismiss the action for want of jurisdiction. The defendants may recover their costs in this court.

VACATED and REMANDED

---

[10] We note that, in addition to failing to meet their burden of establishing the requisite amount in controversy, the plaintiffs also have failed to properly allege diversity of citizenship. Section 1332 of Title 28 states that a corporation "shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The state of incorporation and the principal place of business must be alleged in the complaint. *See McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006) (citing *Casio, Inc. v. S.M.&R. Co., Inc.*, 755 F.2d 528, 529-30 (7th Cir. 1985)). *See also Wojan v. Gen. Motors Corp.*, 851 F.2d 969, 974 (7th Cir. 1988) (stating that party's allegation that corporation was " 'licensed' or 'authorized' to do business in a state does not necessarily make [it] a citizen of that state because besides the state of incorporation, a corporation is only a citizen of the state in which it has its *principal* place of business . . . not every state in which it does business").