**State of WISCONSIN, Plaintiff,**

v.

**HO–CHUNK NATION, Defendant.**

**No. 05–C–632–S.**

United States District Court,
W.D. Wisconsin.

March 9, 2007.

Thomas M. Pyper, Madison, WI, for Plaintiff.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Plaintiff commenced this action to compel arbitration pursuant to provisions of the gaming compact between the parties and the Federal Arbitration Act. The Court compelled arbitration and defendant appealed arguing, among other things, that this Court lacked subject matter jurisdiction. The Court of Appeals determined on appeal that the Court lacked jurisdiction and remanded the case with instructions to dismiss. *Wisconsin v. Ho–Chunk Nation,*

463 F.3d 655, 661 (7th Cir.2006). However, the Court of Appeals suggested the possibility of permitting amendment of the complaint on remand, *Id.,* a suggestion which this Court adopted on December 22, 2006.

In response to the amended complaint defendant now moves to dismiss the amended complaint for lack of subject matter jurisdiction or alternatively for summary judgment on a variety of claims. Plaintiff opposes all motions and asks the Court to proceed to resolution on the merits of its claims. The following facts are undisputed for purposes of the pending motions.

## FACTS

In 1992 the two parties entered into a gaming compact ("Compact") enabling defendant to conduct certain class III games (slot machines and black jack) within the meaning of the Indian Gaming Regulatory Act ("IGRA"). In 1998, the compact was amended to provide exclusive rights to defendant to conduct class III gaming and to require payments of $6.5 million (2000), $7.5 million (2001 and 2002) and $8 million per year (2003 and 2004).

The compact was amended on April 25, 2003 to permit a full range of Las Vegas style class III games, to make the term of the compact indefinite and to increase the payments from defendant to plaintiff ("Second Amendment"). Both parties expressly waived sovereign immunity with respect to any claim brought to enforce the Compact provisions, including suits to collect money under the Compact or to compel arbitration. The Second Amendment significantly increased defendant's required payments, requiring payments of $30 million in 2003 and 2004 and a percentage of defendant's net win in subsequent years. However, the Second Amendment also provides that the payment obligations

would be eliminated in the event a court of competent jurisdiction invalidated the duration provision.

On May 13, 2004 the Wisconsin Supreme Court in *Panzer v. Doyle,* 2004 WI 52, 271 Wis.2d 295, 680 N.W.2d 666, held a similar compact amendment, including a similar duration provision, between Wisconsin and the Forest County Potawatomi tribe to be invalid as exceeding the governor's authority under the Wisconsin Constitution and unlawfully authorizing games precluded by the Wisconsin Constitution.

Following *Panzer,* defendant ceased conducting the additional class III games authorized by the Second Amendment and ceased making payments to plaintiff. The parties engaged in additional unsuccessful negotiations concerning further compact amendments. On June 16, 2005 defendant filed an arbitration complaint pursuant to the terms of the Second Amendment seeking damages from the voiding of the additional class III game provisions. Plaintiff counterclaimed in arbitration for recovery of the payments not made. Following this Court's order compelling arbitration, the parties began arbitration and mediation proceedings before the appointed arbitrator.

On July 14, 2006, the Wisconsin Supreme Court partially abrogated *Panzer,* holding, *inter alia,* that the expansion of class III gaming in the 2003 compact amendments (including the Second Amendment) was lawful. *Dairyland Greyhound Park, Inc. v. Doyle,* 2006 WI 107, ¶ 91, 719 N.W.2d 408. Thereafter, defendant resumed conducting the broader range of class III games authorized by the Second Amendment.

The amended complaint seeks a declaration that defendant's conduct of class III gaming is a violation 25 U.S.C. § 2710(d)(1)(C) because it is not conducted in conformance with a State–Tribal compact and an injunction against defendant's continued class III gaming. The amended complaint also alleges claims for breach of contract and seeks to compel performance under the compact terms.

## MEMORANDUM

Defendant seeks to dismiss the complaint for lack of subject matter jurisdiction. Alternatively, defendant seeks summary judgment on the individual claims, contending that the facts fail to establish that it has breached the compact by failing to make payments or by its conduct in arbitration.

*Jurisdiction*

■ Plaintiff's principal jurisdictional basis is 28 U.S.C. § 1331 and 25 U.S.C. § 2710(d)(7)(A)(ii) which provides:

The United States district courts shall have jurisdiction over—

. . .

(ii) any cause of action initiated by a State or Indian tribe to enjoin a class III gaming activity located on Indian lands and conducted in violation of any 2 Tribal–State compact entered into under paragraph (3) that is in effect, . . .

The provision not only affords subject matter jurisdiction over such an action but also acts as a limited Congressional waiver of tribal sovereign immunity. *See Florida v. Seminole Tribe of Florida,* 181 F.3d 1237, 1242 (11th Cir.1999).

On its face, plaintiff's second cause of action seeks precisely this relief and therefore invokes the Court's jurisdiction. Specifically, the second cause of action seeks to enjoin further class III gaming activities on tribal lands alleging that defendant failed to make required payments in 2004, 2005 and 2006 and failed to submit to binding arbitration as required by the Compact and therefore any continued conduct of class III gaming is in violation of the Compact.

Defendant argues that jurisdiction is not properly invoked under this provision because, even accepting that it is in breach of some aspects of the compact, the actual class III gaming operations are not "in violation of" the compact within the meaning of IGRA. Specifically, defendant urges the Court to interpret this provision to mean that a claim for an injunction against class III gaming invokes the jurisdiction of § 2710(d)(7)(A)(ii) if, for example, a tribe violates the compact by gaming after agreed hours, but not if the tribe refuses to turn over the agreed share of profits from the gaming. Defendant reasons that in the former case the gaming itself is in violation of the agreement, while in the latter the gaming is in compliance, but some other aspect of the agreement is breached.

■ Defendant's proffered interpretation, while plausible, is not reasonable in light of the language, purpose and context of the statute. An equally plausible and far more reasonable literal reading of the statute is that states or tribes may bring an action to enjoin class III gaming if the tribe conducting the gaming is in violation of the compact which authorizes it. The latter interpretation is confirmed by 25 U.S.C. § 2710(d)(1)(C) which makes it unlawful to conduct class three gaming unless it is "conducted in conformance with a Tribal–State compact." A tribe which ignores all obligations to split gaming revenue with the state cannot reasonably be viewed as conducting gaming in conformance with the compact. Yet defendant's interpretation would require this result and render the State powerless to enforce the compact in any way.

The likely Congressional intent in enacting the statute was to provide a remedy for compact violations which limits impingement on tribal sovereignty by stopping short of statutorily waiving sovereign immunity against a suit for money damages or to compel specific performance. Gaming is only lawful if a compact with the state is reached and only then if conducted in accordance with the compact. The logical corollary is that the State be able to sue to enjoin the authorized gaming in the event the Tribe fails to comply with the requirements of the compact. The only circuit court of appeals to have addressed the issue affirmed jurisdiction under nearly identical circumstances. *New Mexico v. Pueblo of Pojoaque*, 30 Fed.Appx. 768 (10th Cir.2002)(opinion not designated for publication in federal reporter).

Defendant's proffered interpretation leads to the absurd result that a minor infraction of a compact provision prescribing gaming hours would support an injunction, while a major breach going to the heart of the compact would stand remediless. Furthermore, the cases on which defendant relies, *Florida v. Seminole Tribe*, 181 F.3d 1237 and *Cabazon Band of Mission Indians v. Wilson*, 124 F.3d 1050 (9th Cir.1997) do not support defendant's position. Both cases hold that § 2710(d)(7)(A)(ii) does not authorize a suit in the absence of some violation of an existing compact. 181 F.2d at 1242 (no compact entered into); 124 F.3d at 1060 (attempted action based on conduct not proscribed by compact). Neither holding is applicable to the facts of this case where an express violation of an existing compact term is alleged.

Accordingly, the Court concludes that it has jurisdiction over the plaintiff's claim to enjoin Class III gaming and over all other related pending claims pursuant to 28 U.S.C. § 1367. For purposes of the present motion, there is no need to determine whether there are additional independent bases for jurisdiction over other claims.

*Summary Judgment*

Having concluded that there is jurisdiction over the complaint, the Court now

considers defendant's challenges to the merits of the claims. There are five such challenges: (1) as a matter of law defendant did not breach the compact by failing to make payments, (2) the arbitration provision is void and unenforceable, (3) defendant has not refused to submit to binding arbitration, (4) plaintiff is precluded from initiating an action to determine its good faith, (5) the Federal Arbitration Act does not apply to contracts affecting only Indian commerce.

Summary judgment is appropriate when, after both parties have the opportunity to submit evidence in support of their respective positions and the Court has reviewed such evidence in the light most favorable to the nonmovant, there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P. A fact is material only if it might affect the outcome of the suit under the governing law. Disputes over unnecessary or irrelevant facts will not preclude summary judgment. A factual issue is genuine only if the evidence is such that a reasonable factfinder, applying the appropriate evidentiary standard of proof, could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Under Rule 56(e) it is the obligation of the nonmoving party to set forth specific facts showing that there is a genuine issue for trial.

*Breach of compact*—failure to pay. Defendant seeks summary judgment on any claims which depend on an alleged breach of the compact for failure to pay the specified fees. Defendant argues that it was relieved from its obligation to make payments when the Wisconsin Supreme Court invalidated the indefinite duration provision of the Wisconsin compact with the Forest County Potawatomi tribe in *Panzer v. Doyle,* 2004 WI 52 at ¶ 82, 271 Wis.2d 295, 680 N.W.2d 666. Plaintiff contends that the *Panzer* decision did not impact payment obligations under the Compact.

The operable provision of the Compact, paragraph 15A of the Second Amendment provides:

> In the event that Paragraph 7 (Duration) of this Second Amendment is disapproved, in whole or in part, by the Secretary of the Interior or is found unenforceable or invalid by a court of competent jurisdiction, The State shall refund the amounts paid by the Nation to the State in the first two years under paragraph 12 of the Second Amendment. In addition, the Nation shall not be required to make any further payments under paragraph 12 of this Second Amendment, and the parties shall negotiate in good faith to reach agreement on substitute provisions for Paragraphs 7 and 12. If a mutually satisfactory solution is not achieved within sixty (60) days of the Secretary's action or the court's decision, the Parties shall resolve the dispute pursuant to Paragraph 11 of this Second Amendment.

The legal issue presented concerns the interpretation of the first sentence and particularly whether the decision in *Panzer,* which invalidated a similar provision in a different compact, satisfies the requirement that "Paragraph 7 of this Second Amendment ... [be] found unenforceable or invalid by a court of competent jurisdiction," thereby relieving defendant of its obligation to pay.

█ A compact is a contract, subject to the ordinary rules of contract construction. *See Texas v. New Mexico,* 482 U.S. 124 128, 107 S.Ct. 2279, 96 L.Ed.2d 105 (1987). The goal of contract interpretation is to ascertain the intent of the parties from the language of the agreement. *Dairyland Greyhound Park,* 2006 WI 107 at ¶ 61, 719 N.W.2d 408. The literal lan-

guage of the Compact relieves defendant of its obligations if a court of competent jurisdiction finds *paragraph 7 of the Second Amendment* unenforceable or invalid. The invalidation of a similar provision of the Forest County Potawatomi compact in *Panzer* does not literally satisfy the requirement. Nevertheless, *Panzer* made clear that an immediate challenge to the validity of paragraph 7 of the Second Amendment would likely be successful. The question is whether the parties intended to distinguish between a ruling on the validity of the Compact itself and a general legal ruling which called its validity into question.

 Based on the language the parties used, the distinction is important and the parties very likely intended the literal requirement to apply. *Panzer* posits the following intent of the parties:

> Because the state would pay a heavy financial price if it were able to lawfully and unilaterally repudiate the duration provision, the refund provision of the 2003 amendments resembles a sort of poison pill.... If the duration were somehow voidable, the financial penalty attending success in avoiding it provides a serious barrier to pursuing that remedy.

2004 WI 52 at ¶ 75, 271 Wis.2d 295, 680 N.W.2d 666. The parties contemplated that the duration provision might become *voidable* (as it arguably did after *Panzer*), and adopted paragraph 15A as a disincentive for the state to actually void the provision by seeking a court determination. Indeed, the provision was apparently successful as plaintiff did not challenge any of the tribal gaming compacts on the basis of *Panzer*, instead continuing to treat them as though they remained in effect and to collect the payments.

The importance of the distinction between a decision which arguably renders the duration clause voidable, and a court determination that the clause is actually invalid and unenforceable is illustrated by the subsequent decision in *Dairyland.* While *Dairyland* did not expressly address the validity of the duration provision, 2006 WI 107, ¶ 2, fn. 4, 719 N.W.2d 408, its analysis called the continuing survival of the *Panzer* duration ruling into question. *See Id.* at 271 Wis.2d 295, ¶ 111, 680 N.W.2d 666 (Prosser concurring in part, dissenting in part).

The parties intentionally agreed to limit the paragraph 15A trigger to an actual successful legal challenge to the validity or enforceability of paragraph 7 of the Second Amendment. An event which has not occurred and may never occur. As a result, defendant is not entitled to summary judgment that paragraph 15A relieved it of its payment obligations under the Compact.

 *Dispute resolution under paragraph 15A.* Defendant seeks summary judgment that the requirement of paragraph 15A that negotiation for a new provision be resolved by arbitration is preempted by IGRA. Based on the determination above that there has been no event to trigger the paragraph 15 provisions, the issue is moot.

 *Breach of compact—refusal to negotiate or arbitrate.* Defendant maintains that there are no facts which could sustain a finding that it has refused to negotiate or arbitrate as required by paragraph 11 of the Second Amendment. In response, plaintiff points to defendant's assertion that this Court lacks jurisdiction to enforce an arbitration award, that it needed time to discuss the matter of submitting all disputes to binding arbitration with the tribal legislature, and the filing of the present motion. It has been apparent from the outset of this action that neither party is interested in obtaining an expeditious resolution of the dispute. However, merely pursuing every possible non-frivolous legal and procedural argument does

not constitute a refusal to negotiate or arbitrate in compliance with the Compact. Plaintiff's alleged evidence of bad faith amounts to nothing more than allegations of vigorous legal defense and could not support a finding of breach. Because plaintiff has failed to bring forth sufficient evidence to sustain a factual finding in its favor, defendant's motion for summary judgment on the claim must be granted.

*Declaratory relief—determination of good faith.* In addition to seeking a determination that defendant has failed to negotiate and arbitrate in good faith, plaintiff seeks a declaration that it has negotiated in good faith. For purposes of the present motion, defendant does not argue that the facts support a finding that plaintiff has failed to negotiate in good faith. Rather, it argues that plaintiff has no right to seek, and this Court has no right to grant the relief sought.

■ Plaintiff seeks declaratory relief pursuant to 28 U.S.C. § 2201. Jurisdiction is assessed on whether the court would have jurisdiction over the presumed suit by the defendant. *GNB Battery Technologies, Inc. v. Gould, Inc.*, 65 F.3d 615, 619 (7th Cir.1995). Here, the Court would have jurisdiction over a suit by the tribe in accordance with 25 U.S.C. § 27 10(d)(7)(A)(1), an action which the Tribe has previously threatened. Accordingly, there is no jurisdictional impediment to the request for declaratory relief.

*Applicability of Federal Arbitration Act.* Defendant moves for summary judgment on plaintiff's claims to compel arbitration on the basis that the Federal Arbitration Act is inapplicable because the Compact involves only Indian Commerce which is not encompassed by the FAA. The Court has already addressed this identical argument in its memorandum and order of December 8, 2005:

9 U.S.C. § 2 limits the application of the FAA to a written provision in a contract "evidencing a transaction involving commerce." 9 U.S.C. § 1 defines "commerce" as "commerce among the several states or with foreign nations …" Defendant constructs an elaborate argument that a contract between a tribe and a state does not arise under either the Interstate or Indian Commerce Clauses of the Constitution and therefore is not commerce within the meaning of the FAA. Assuming defendant is correct that the state-tribal compact itself is technically not "commerce" in the Constitutional sense, that fact is irrelevant. The Supreme Court has held that the phrase "involving commerce" as used in the Act is intended to broadly cover contracts that "affect commerce" *Allied–Bruce Terminix Cos., Inc. v. Dobson,* 513 U.S. 265, 273–74, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). The question is not whether the compact itself is interstate commerce, but whether the compact in fact affects commerce. *Id.* at 281–82, 115 S.Ct. 834. The compact significantly affects interstate commerce both in terms of equipment and service vendors and the attraction of interstate gaming customers. Accordingly, the FAA applies to permit enforcement of the parties agreement to arbitrate.

■ Defendant now moves to reconsider this ruling. Very little of defendant's argument goes to the dispositive legal conclusion of the Court: that the FAA applies to contracts that *affect* interstate commerce, which the Compact certainly does. There is simply no question that an agreement which authorizes and permits the operation of gaming casinos attracting interstate customers and contracting with interstate suppliers affects interstate commerce.

To argue that the compact is Indian commerce, while undoubtedly correct, does

nothing to disprove that it also affects interstate commerce and therefore falls within the coverage of the FAA. Stated differently, defendant's argument rests on the false premise that if a compact is Indian Commerce it cannot affect interstate commerce. To the contrary, contracts entered into pursuant to IGRA for the development of Indian gaming facilities (which clearly are Indian commerce and also affect interstate commerce) have been held subject to the FAA. *See Match–E–Be–Nash–She–Wish Band of Pottawatomi Indians v. Kean–Argovitz Resorts,* 383 F.3d 512, 514 (6th Cir.2004)(casino development agreement governed by IGRA subject to FAA).

Defendant argues that recent amendments to 25 U.S.C. § 415(f) prove that the FAA was not intended to encompass contracts in Indian commerce. The recent provision extends the FAA definition of commerce to "any contract, including a lease, affecting land within the Gila River Indian Community Reservation ..." This amendment is entirely consistent with the conclusion that tribal contracts affecting interstate commerce have always been encompassed by the FAA. Local land leases and contracts with tribes might very well not have previously fallen within the FAA because they have no affect on interstate commerce. The enactment, apparently pursuant to Indian Commerce Clause powers, now extends the reach of the FAA to such contracts without regard to their effect (or lack of effect) on interstate commerce. Such an amendment in no way undermines the conclusion that the FAA has always applied to tribal contracts (like the gaming compact at issue here) that affect interstate commerce.

### ORDER

IT IS ORDERED that defendant's motion to dismiss for lack of jurisdiction is DENIED.

IT IS FURTHER ORDERED that defendant's motion for summary judgment is GRANTED as it concerns plaintiff's claim based on defendant's alleged breach of the contractual negotiation and arbitration provision and is in all other respects DENIED.