In the

# United States Court of Appeals
## For the Seventh Circuit

No. 07-1584

STATE OF WISCONSIN,

*Plaintiff-Appellee,*

*v.*

HO-CHUNK NATION,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 05-C-0632-S—**John C. Shabaz**, *Judge.*

ARGUED OCTOBER 24, 2007—DECIDED JANUARY 14, 2008

Before FLAUM, MANION, and WILLIAMS, *Circuit Judges.*

FLAUM, *Circuit Judge.* The State of Wisconsin ("the State") and the Ho-Chunk Nation ("the Nation") are embroiled in a dispute over the validity of certain provisions in the parties' gaming compact ("the Compact") in light of two decisions by the Wisconsin Supreme Court. Efforts to resolve this dispute through the arbitration process set forth in the Compact stalled, leading the State to bring suit in the Western District of Wisconsin to compel arbitration. The district court exercised jurisdiction over the suit and appointed an arbitrator, but on appeal, this Court concluded that federal subject matter jurisdiction was lacking, noting that the Indian Gaming Regulatory Act of 1988 ("IGRA") conferred jurisdiction in

three specific instances, none of which were implicated by the case at hand. The State then filed an amended complaint in district court, this time including a claim to enjoin the Nation's class III gaming due to alleged violations under the Compact pursuant to 25 U.S.C. § 2710(d)(7)(A)(ii), one of the three provisions explicitly granting federal courts jurisdiction under the IGRA. The district court found that subject matter jurisdiction existed under this provision. The court also determined as part of its summary judgment order that the Wisconsin Supreme Court's decisions did not invalidate the provisions in the Compact. This interlocutory appeal by the Nation followed. For the following reasons, we affirm that the district court had jurisdiction over the suit and that the Nation's sovereign immunity was abrogated by Congress and waived by the Nation. In addition, we partially vacate and remand the lower court's ruling on the Nation's motion for summary judgment so that the district court may first determine whether any of the State's claims are subject to arbitration.

## I.  Background

In 1992, the Ho-Chunk Nation, known at the time as the Wisconsin Winnebago Tribe, and then-Governor Tommy Thompson, acting on behalf of the State of Wisconsin, entered into a gaming compact pursuant to the IGRA. This Compact permitted the Nation to conduct certain "class III" gaming, as defined in the IGRA.[1] The parties amended the Compact in 1998, and did so a second time in 2003. This "Second Amendment" was the result of negotiations between the Nation and Governor James Doyle, and was

---

[1]  For an overview of the IGRA's purpose, history, and effect on Tribal-State compacting, *see* COHEN'S HANDBOOK OF FEDERAL INDIAN LAW § 12 (Matthew Bender & Company 2005).

approved by the Secretary of the Interior by operation of law, since the Secretary took no action on it within forty-five days of its submission for approval. 25 U.S.C. § 2710(d)(8)(C). The Second Amendment expanded the Nation's class III gaming to include various Vegas-style games and increased revenue-sharing between the Nation and the State. The validity of certain provisions in the Second Amendment is the focus of the parties' dispute.

When the parties initially amended the Compact in 1998, they included a revenue-sharing provision. The Second Amendment greatly expanded this revenue-sharing agreement. The Nation agreed to pay $30 million a year to the State from July 2003-July 2005. After that, the Nation would pay the State an annual percentage of its net win unless either party requested renegotiations. In consideration for these payments, the State agreed to a perpetual term for the Compact, an indemnification clause protecting the Nation from off-reservation gaming, and permission by the Governor for the Nation to pursue gaming at a fourth site. With respect to the Second Amendment's Duration clause, the Compact would remain in force in perpetuity unless the parties mutually consented to termination or if the Nation passed a resolution revoking its authority to engage in class III gaming. The Second Amendment also provided that if this Duration provision were found invalid or unenforceable "by a court of competent jurisdiction," the Nation would no longer be required to make payments to the State. The parties would then be required to renegotiate those invalidated provisions pursuant to the Dispute Resolution and Sovereign Immunity provisions in the Compact. The Second Amendment also required that the parties follow a similar renegotiation process if a court found provisions regarding the "Scope of Games" or "Payment to the State" to be invalid, and stated that if any other portion of the

Second Amendment were found invalid, the parties would renegotiate in good faith upon either party's request. Coupled with these dispute resolution requirements was a provision governing the parties' sovereign immunity, which both the State and Nation waived with respect to any claim brought by either party to enforce any provision of the Compact.

On May 13, 2004, the Wisconsin Supreme Court decided *Panzer v. Doyle*, 680 N.W.2d 666 (Wis. 2004), *abrogated in part by Dairyland Greyhound Park, Inc. v. Doyle*, 719 N.W.2d 408 (Wis. 2006), which addressed the validity of certain provisions in a gaming compact between the State and the Forest County Potawatomi. The Wisconsin Supreme Court made three holdings in the case: (1) the Governor lacked authority to commit the State to compacts lasting in perpetuity; (2) much of the expansion of class III gaming in 2003 was prohibited by the Wisconsin constitution and criminal code; and (3) the Governor lacked inherent or delegated authority to waive the State's sovereign immunity. *Id.* at 701. The court then expressed its expectation that the parties would renegotiate the amendments to the compact voided by the court's decision. *Id.*

The *Panzer* decision cast doubt on the legitimacy of the Compact between the State and the Nation, since the Second Amendment contained duration, class III gaming, and sovereign immunity clauses nearly identical to those invalidated by the Wisconsin Supreme Court. The Nation and State, however, disagreed as to whether the terms of their Compact were immediately invalidated by *Panzer*, or whether they continued to remain in effect until a court decision was issued with respect to their specific Compact. The Nation took the former position and altered its conduct accordingly. Thus, the Nation: (1) ceased operation of class III gaming added under the Second Amendment; (2) stopped its payments to the

State pursuant to the clause permitting the Nation to do so if the Duration provision were found invalid "by a court of competent jurisdiction"; and (3) deemed the State's sovereign immunity revoked, which under the Nation's reading of the Compact, served to automatically revoke its waiver of immunity as well. The State, however, took the latter position, and therefore contended that all the provisions in the Compact were still valid, including the Nation's required revenue-sharing payments to the State.

The parties began to renegotiate the Compact provisions implicated by *Panzer*, but these efforts stalled, leading the Nation to submit a complaint in arbitration on June 23, 2005. After efforts to find a mutually acceptable arbitrator also failed, the State filed suit on October 28, 2005 in the Western District of Wisconsin, requesting that the court appoint an arbitrator. The court, over the Nation's objections, found that it had jurisdiction and appointed the Honorable William A. Norris, a retired federal judge, as arbitrator. The Nation appealed the denial of its motion to dismiss with this Court. While the appeal was pending, the parties began arbitration before Judge Norris, but stayed the proceedings in May 2006 pending this Court's decision on the Nation's appeal and the Wisconsin Supreme Court's forthcoming opinion in *Dairyland Greyhound Park, Inc. v. Doyle,* 719 N.W.2d 408 (Wis. 2006).

On July 14, 2006, the Wisconsin Supreme Court decided *Dairyland Greyhound Park*, in which it determined that amendments to gaming compacts were governed by the language of the Wisconsin Constitution as it existed when the original compacts were entered into. *Id.* at 442. This decision resulted in *Panzer* being partially overturned, in that nothing barred the State from negotiating with tribes over class III gaming so long as the original compact pre-dated the 1993 Amendment to the Wisconsin

Constitution. *Id.* at 443. As a result of this decision, the Nation reinstated the class III games it had stopped operating after the *Panzer* decision.

This Court decided the Nation's appeal on September 1, 2006, holding that the district court lacked subject matter jurisdiction over the suit. *State of Wisconsin v. Ho-Chunk Nation,* 463 F.3d 655 (7th Cir. 2006) ("*Ho-Chunk I*"). This Court noted that the Federal Arbitration Act ("FAA") did not itself provide a basis for jurisdiction, and further determined that there was not an independent basis for federal jurisdiction in this case, since none of the three instances in the IGRA where Congress explicitly conferred federal jurisdiction were pled, and this could not be said to be a case arising under federal law. *Id.* at 659-61.

Following this Court's decision in *Ho-Chunk I*, the State then filed an amended complaint in the Western District of Wisconsin which included eight causes of action related to the Nation's alleged withholding of revenue-sharing payments and failure to arbitrate. Unlike the State's initial complaint, the amended complaint included a claim pursuant to 25 U.S.C. § 2710(d)(7)(A)(ii) of the IGRA, one of the three specific instances where the Act granted federal jurisdiction. Under this cause of action the State sought to enjoin the Nation's class III gaming on the basis of its alleged Compact violations. The amended complaint also included a claim for breach of contract and sought declarations that the Nation was in violation of the IGRA, that the State had complied with the IGRA by negotiating in good faith, and that the Nation must pay all current and future amounts due under the Compact's revenue-sharing provision. Finally, the State brought claims for the court to compel arbitration for all arbitrable claims, reappoint Judge Norris as arbitrator, and stay the action pending the arbitrator's award.

The Nation for its part, brought counterclaims against the State for breach of contract and violations of the IGRA, requesting that the court order the parties to engage in negotiations according to the procedures set forth in the IGRA. The Nation then brought a motion to dismiss or, alternatively, for summary judgment regarding the State's amended complaint. With respect to federal jurisdiction, the Nation contended that 25 U.S.C. § 2710(d)(7)(A)(ii), which grants federal courts jurisdiction over a claim by a State to "enjoin a class III gaming activity . . . conducted in violation of any Tribal-State compact," was inapplicable in this case and moreover, that the Nation's sovereign immunity barred the district court from hearing the case on any other basis. In the alternative, the Nation also moved for summary judgment, claiming that in light of the *Panzer* and *Dairyland Greyhound Park* decisions, it was not acting in violation of the Compact. The Nation also contested the State's efforts to compel arbitration, claiming that the Compact's Dispute Resolution provision was preempted by the IGRA and was not covered by the FAA.

On March 9, 2006, the district court issued its memorandum and order on the Nation's motions. The district court adopted the State's interpretation of 25 U.S.C. § 2710(d)(7)(A)(ii), and thus found that it had jurisdiction over the State's claim to enjoin the Nation's class III gaming activity. The court then exercised supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the State's remaining claims. The district court then turned to the Nation's motion for summary judgment. With respect to the *Panzer* decision's effect on the Compact, the district court determined that the Wisconsin Supreme Court's decision did not serve as a finding "by a court of competent jurisdiction" that the Second Amendment's Duration provision was invalid or unenforceable. This finding served to moot the Nation's preemption claim regarding renegoti-

ation under the IGRA, since it was unnecessary for the parties to renegotiate any of the Compact's provisions. As to the Nation's other arguments on summary judgment, the district court determined that federal jurisdiction did exist for the State's claim seeking a declaration it acted in good faith and denied the Nation's claim that the FAA was inapplicable. The district court, however, did grant the Nation's motion for summary judgment on one ground, determining that the State had failed to provide sufficient evidence to support a finding that the Nation had refused to negotiate or arbitrate under the terms of the Compact.

Although the district court's memorandum and order did not constitute a final decision for purposes of appellate jurisdiction, *see* 28 U.S.C. § 1291, the Nation argues that the district court's finding that the suit was not barred by the Nation's sovereign immunity is appealable under the collateral order doctrine. The Nation has thus brought this interlocutory appeal, claiming: (1) that 25 U.S.C. § 2710(d)(7)(A)(ii) did not grant the district court jurisdiction or abrogate the Nation's sovereign immunity; and (2) that the district court erred in finding that the *Panzer* decision did not affect the Compact's terms.

## II. Analysis

### A. Appellate Jurisdiction

As a threshold issue, we have to determine whether we have appellate jurisdiction over this appeal. As a general matter, this Court may only hear appeals "from all final decisions of the district courts." 28 U.S.C. § 1291. This rule, however, is not without exception, and the "collateral order doctrine" provides that certain decisions "are immediately appealable because they 'finally determine claims of right separable from, and

collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.'" *Behrens v. Pelletier*, 516 U.S. 299, 305, 116 S. Ct. 834, 133 L. Ed. 2d 773 (1996) (quoting *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 93 L. Ed. 1528, 69 S. Ct. 1221 (1949)). Here, although the district court's decision was not final, the Nation asserts that the issues it is appealing implicate the Nation's sovereign immunity from suit, a subject it contends falls under the scope of the collateral order doctrine.

Tribal sovereign immunity is "a necessary corollary to Indian sovereignty and self-governance,*" Three Affiliated Tribes of Fort Berthold Reservation v. Wold Engineering, P. C.*, 476 U.S. 877, 894, 90 L. Ed. 2d 881, 106 S. Ct. 2305 (1986), and extends to suits for injunctive or declaratory relief. *Imperial Granite Co. v. Pala Band of Mission Indians*, 940 F.2d 1269, 1271 (9th Cir. 1991) (citing *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 59, 56 L. Ed. 2d 106, 98 S. Ct. 1670 (1978)). "Suits against Indian tribes are thus barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation." *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509, 111 S. Ct. 905, 909, 112 L. Ed. 2d 1112 (1991). A district court's determination that a tribe's sovereign immunity has been waived by the tribe or abrogated by Congress falls within the ambit of the collateral order doctrine as applied by this Court:

> Since sovereign immunity is an immunity from trial and the attendant burdens of litigation, and not just a defense to liability on the merits, the denial of a claim of sovereign immunity is an immediately appealable interlocutory order under the "collateral order doctrine" of *Cohen v. Beneficial Industrial Loan*

*Corp.*, 337 U.S. 541, 545-47, 69 S. Ct. 1221, 1225-26, 93 L. Ed. 1528 (1949).

*Enahoro v. Abubakar,* 408 F.3d 877, 880 (7th Cir. 2005) (quoting *Rush-Presbyterian-St.Luke's Medical Center v. The Hellenic Republic*, 877 F.2d 574, 576 n.2 (7th Cir. 1989)).

Although a denial of the Nation's sovereign immunity is immediately appealable under the collateral order doctrine, the State contends that this Court should not consider the two specific issues raised by this Nation on appeal. The first issue appealed by the Nation is the district court's finding that it had jurisdiction over the State's second cause of action pursuant to 25 U.S.C. § 2710(d)(7)(A)(ii), which grants federal courts jurisdiction over suits "by a State . . . to enjoin a class III gaming activity . . . conducted in violation of any Tribal-State compact entered into under paragraph (3)." The State has filed a jurisdictional memorandum with this Court contending that this appeal is frivolous and should be dismissed. This argument is without merit. The State mischaracterizes the Nation's claim as questioning courts' interpretation that 25 U.S.C. § 2710(d)(7)(A)(ii) serves as a congressional abrogation of tribal sovereign immunity. *See Florida v. Seminole Tribe of Florida*, 181 F.3d 1237, 1242 (11th Cir. 1999); *see also Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 758, 118 S. Ct. 1700, 140 L. Ed. 2d 981 (1998). The Nation however, does not question these holdings, but rather argues as a matter of statutory interpretation that its alleged Compact violations do not provide the State with a cause of action under 25 U.S.C. § 2710(d)(7)(A)(ii). This is an unsettled question of law, and we reject the State's argument that it is frivolous.

The State also contends that this Court should not consider the Nation's second claim on appeal—that the

district court erred in determining that the Wisconsin Supreme Court's decision in *Panzer* did not constitute a finding "by a court of competent jurisdiction" that the Second Amendment's Duration provision was invalid or unenforceable. Because this argument is moot if we find that the district court did not have federal jurisdiction pursuant to 25 U.S.C. § 2710(d)(7)(A)(ii), we first turn to address the proper interpretation of § 2710(d)(7)(A)(ii).

**B. Federal Jurisdiction Under 25 U.S.C. § 2710(d)(7)(A)(ii)**

In response to *Ho-Chunk I*, where this Court determined that no federal jurisdiction existed over the suit, the State included a claim in its amended complaint to enjoin the Nation's class III gaming pursuant to 25 U.S.C. § 2710(d)(7)(A)(ii), one of the three specific congressional grants of federal jurisdiction in the IGRA. *See Ho-Chunk I*, 463 F.3d at 660 (quoting 25 U.S.C. § 2710(d)(7)(A)(i)-(iii)). The parties also agree that 25 U.S.C. § 2710(d)(7)(A)(ii), in addition to conferring federal jurisdiction, also serves as a congressional abrogation of tribal sovereign immunity. *See Seminole Tribe of Florida*, 181 F.3d at 1242 (With respect to 25 U.S.C. § 2710(d)(7)(A)(ii), it is "clear that Congress abrogated tribal immunity only in the narrow circumstance in which a tribe conducts class III gaming in violation of an existing Tribal-State compact."); *see also Kiowa Tribe of Oklahoma,* 523 U.S. at 758 ("[Congress] has restricted tribal immunity from suit in limited circumstances.") (citing 25 U.S.C. § 2710(d)(7)(A)(ii)). Therefore, the Nation's sovereign immunity is inextricably wrapped up with the question of federal subject matter jurisdiction under the IGRA. We review questions involving these issues *de novo*. *Samirah v. O'Connell*, 335 F.3d 545, 548 (7th Cir. 2003) ("We review *de novo* the existence of sub-

ject matter jurisdiction."); *Nelson v. LaCrosse County Dist. Attorney*, 301 F.3d 820, 825 (7th Cir. 2002) (grant or denial of sovereign immunity, in that case invoked by a state, is reviewed *de novo*).

The issue of whether the State properly brought a claim against the Nation pursuant to 25 U.S.C. § 2710(d)(7)(A)(ii) is purely a matter of statutory interpretation. The provision provides:

> The United States district courts shall have jurisdiction over— . . .
>
> (ii) any cause of action initiated by a State or Indian tribe to enjoin a class III gaming activity located on Indian lands and conducted in violation of any Tribal-State compact entered into under paragraph (3) that is in effect, . . .

25 U.S.C. § 2710(d)(7)(A)(ii). Here, the State brought a claim to enjoin the Nation's class III gaming on the basis of the Nation's refusal to pay the amounts allegedly due under the Compact's revenue-sharing agreement and the Nation's alleged refusal to submit to binding arbitration. The sole issue for this Court to decide is whether this alleged conduct by the Nation constitutes the type of compact violation for which an injunction may be granted under this provision.

The district court offered a straightforward interpretation of 25 U.S.C. § 2710(d)(7)(A)(ii), based on the plain text of that provision, that is similarly adopted by the State on this appeal. According to this interpretation, the statutory language permitting "a State . . . to enjoin a class III gaming activity . . . conducted in violation of any Tribal-State compact," means that the State is able to sue to enjoin class III gaming whenever "the Tribe fails to comply with the requirements of the compact." *Wisconsin v. Ho-Chunk Nation*, 478 F. Supp. 2d 1093, 1097 (W.D. Wis.

2007). Under this reading of the statute, the district court found, and the State argues on appeal, that the claim was proper in that it sought to enjoin the Nation's class III gaming for the Nation's alleged failure to comply with the Compact's revenue-sharing and dispute resolution provisions. The State supports its position by drawing attention to other provisions in the IGRA, which reflect that class III gaming is only permitted when performed in accord with a Tribal-State compact. 25 U.S.C. § 2710(d)(1)(C) ("*Class III gaming activities shall be lawful on Indian lands only if such activities are . . . conducted in conformance with a Tribal-State compact* entered into by the Indian tribe and the State under paragraph (3) that is in effect.") (emphasis added); 25 U.S.C. § 2710(d)(2)(C) ("*class III gaming activity on the Indian lands of the Indian tribe shall be fully subject to the terms and conditions of the Tribal-State compact* entered into under paragraph (3) by the Indian tribe that is in effect.") (emphasis added). The State thus contends that because class III gaming only exists by virtue of the compact permitting it, it is appropriate for such gaming to be enjoined whenever the Nation violates the Compact's terms.

The Nation argues that the State's interpretation of 25 U.S.C. § 2710(d)(7)(A)(ii) is too broad in scope, and offers an alternative interpretation, which it claims is consistent with the plain text of the statute and the broader purposes of the IGRA. According to the Nation, the provision's language granting district courts jurisdiction over claims brought by a State "to enjoin a class III gaming activity . . . conducted in violation of any Tribal-State compact," means that jurisdiction exists for states to enjoin a tribe's class III gaming when that gaming is being conducted in a manner that violates compact provisions that prescribe how the games are to be played. Under this reading, jurisdiction for injunctive relief would only exist for compact violations directly related to the opera-

tion of class III gaming. Therefore, the provision's applicability would be limited to compact violations such as the playing of unauthorized games, the playing of games at unauthorized locations or during unauthorized hours, or the wagering of bets outside the agreed upon betting limits. According to the Nation, the alleged violations for which the State seeks an injunction—nonpayment of funds and failure to arbitrate—are not directly related to the conduct of class III gaming and thus would not provide a basis for jurisdiction.

This interpretation of 25 U.S.C. § 2710(d)(7)(a)(ii) is more nuanced than that offered by the State, and the Nation attempts to bolster its reading of the provision by referencing the broad purposes of the IGRA. The Act sets forth three purposes for its enactment: (1) to provide for Indian gaming for purposes of "promoting tribal economic development, self-sufficiency, and strong tribal governments"; (2) to provide for the regulation of Indian gaming in order to protect it from organized crime, guarantee the tribe is the primary beneficiary of the gaming, and "to assure that gaming is conducted fairly and honestly"; and (3) to create a federal means for regulating Indian gaming. 25 U.S.C. § 2702. The Nation argues that because the State is the party seeking an injunction under 25 U.S.C. § 2710(d)(7)(A)(ii), jurisdiction for injunctive relief is only appropriate when state interests under the IGRA are implicated. Referencing the purposes of the Act as set forth in 25 U.S.C. § 2702, the Nation contends that state interests are limited to ensuring gaming is conducted fairly and without the influence of organized crime, and does not extend to the protection of the State's financial interests under the Compact's revenue-sharing agreement. It would violate the plain text of 25 U.S.C. § 2710(d)(7)(A)(ii), however, to narrowly interpret that provision so as to only reflect state interests. Although the State of Wisconsin is the party bringing

suit under 25 U.S.C. § 2710(d)(7)(A)(ii) in this particular case, the language of that section clearly provides that federal jurisdiction exists over "any cause of action initiated by a State *or Indian tribe* to enjoin a class III gaming activity."[2] 25 U.S.C. § 2710(d)(7)(A)(ii) (emphasis added).

While the Nation's interpretation of 25 U.S.C. § 2710(d)(7)(A)(ii) is unduly narrow in scope, the State's interpretation suffers from the same flaw at the opposite end of the spectrum. According to the State and district court's reading of 25 U.S.C. § 2710(d)(7)(A)(ii), a state may enjoin class III gaming for *any* violation of a Tribal-State compact. Some provisions included in tribal-state compacts however, are rather far afield from any of the state or tribal interests for which the IGRA was intended. *See* 25 U.S.C. § 2702. For example, the Compact between the State and the Nation includes a provision

---

[2] At oral argument, the Nation contended that Congress included Indian tribes as a party able to seek an injunction under 25 U.S.C. § 2710(d)(7)(A)(ii) because at the time the IGRA was enacted, the Act grandfathered in certain tribes that had licensed their gaming operations to individual Indians, and Congress wanted to ensure that the tribal governments had a means of enjoining any illegal gaming activity conducted by these individuals. We note that such an interpretation is not evident from the plain text of the provision and that the Nation has not provided any specific citation to the legislative history to support its view. Furthermore, regardless of the reason Congress included Indian tribes in this section, courts have applied 25 U.S.C. § 2710(d)(7)(A)(ii) so as to permit a suit brought by a tribe to enjoin class III gaming conducted in violation of a Tribal-State compact. *See In re Sac & Fox Tribe of the Miss. in Iowa/Meskwaki Casino Lit.*, 340 F.3d 749 (8th Cir. 2003) (holding that the tribe's elected council had jurisdiction under 25 U.S.C. § 2710(d)(7)(A)(ii) to bring a suit against the tribe's appointed council to enjoin the appointed council's alleged illegitimate operation of a casino under the terms of the tribe's compact with the State of Iowa).

whereby the Nation will contribute to rehabilitating the Badger Army Ammunition Base near Baraboo, Wisconsin. Under the State's interpretation of 25 U.S.C. § 2710(d)(7)(A)(ii), Congress both conferred jurisdiction and abrogated the Nation's sovereign immunity so as to permit the State to enjoin the Nation's class III gaming if the Nation were to neglect its obligation to the ammunition base. More troubling however, is that the State, in arguing that the Nation's class III gaming be enjoined for the Nation's alleged breach of its revenue-sharing obligation under the Compact, is urging this Court to confer jurisdiction for the alleged violation of a provision that is arguably barred by the IGRA itself.

The validity, under the IGRA, of revenue-sharing agreements in tribal-state compacts has been a contentious issue. *See* COHEN'S HANDBOOK OF FEDERAL INDIAN LAW § 12.05 (Matthew Bender & Company 2005). The IGRA includes a list of seven items which "[a]ny Tribal-State compact . . . may include provisions relat[ed] to." 25 U.S.C. § 2710(d)(3)(C)(i-vii). While this list provides that states and tribes may negotiate assessments by the state to defray its costs in regulating gaming, 25 U.S.C. § 2710(d)(3)(C)(iii), and includes a general catchall that the compact may address "any other subjects that are directly related to the operation of gaming activities," 25 U.S.C. § 2710(d)(3)(C)(vii), tribal-state revenue-sharing agreements are not expressly discussed in this section. *See* 25 U.S.C. § 2710(d)(3)(C)(i-vii). Moreover, such a revenue-sharing agreement is at least in tension with 25 U.S.C. § 2710(d)(4), which states that "nothing in this section shall be interpreted as conferring upon a State . . . authority to impose any tax, fee, charge, or other assessment upon an Indian tribe . . . to engage in a class III activity." States and tribes commonly circumvent the prohibitory language in § 2710(d)(4) by having such payments to the state serve as consideration for the

tribe's exclusive operation of its gaming, rather than the ability to engage in class III gaming itself. COHEN'S HANDBOOK OF FEDERAL INDIAN LAW § 12.05; Gatsby Contreras, Note, *Exclusivity Agreements in Tribal-State Compacts: Mutual Benefit Revenue-Sharing or Illegal State Taxation?*, 5 J. GENDER RACE & JUST. 487, 494-95 (2002). Such is the case in the Compact between the Nation and the State, where payments to the State were made in exchange for exclusivity in the area surrounding the Nation's gaming operations and advance approval by the Governor for a potential fourth gaming site for the Nation in Madison, Wisconsin.

The Department of the Interior has permitted such revenue-sharing agreements when the State provides the tribe with "substantial economic exclusivity for Indian gaming," COHEN'S HANDBOOK OF FEDERAL INDIAN LAW § 12.05, n.133 (quoting Letter to Honorable Janet Napolitano, Governor of Arizona, from Aurene Martin, Acting Assistant Secretary of Indian Affairs (Jan. 24, 2003)), but the legitimacy of these revenue-sharing provisions is far from a settled issue. *See* Matthew L. M. Fletcher, *Bringing Balance to Indian Gaming*, 44 HARV. J. ON LEGIS. 39 (2007) (discussing the still unsettled validity of these agreements and proposing a legislative solution). Thus far, the Ninth Circuit is the only one of our sister circuits to have addressed the validity of these revenue-sharing agreements, in that case finding them valid under the IGRA. *In re Indian Gaming Related Cases,* 331 F.3d 1094 (9th Cir. 2003) ("*In re Indian Gaming*"). While we decline to use the case before us to weigh in on this matter, we do note that the terms of the revenue-sharing agreements at issue in *In re Indian Gaming* are distinct from the one contained in the Compact between the Nation and the State. In *In re Indian Gaming*, the state's use of the payments made by the tribes was heavily restricted, with all payments placed in two

funds, one of which distributed gaming revenue amongst non-gaming tribes, with the other designed to fund programs to treat gambling addiction, support local agencies impacted by Indian gaming, and finance other costs directly related to gaming operations. *Id.* at 1105-06. Here, however, the Nation's payments to the State are made without any restrictions or limits on the manner in which the State may use those funds. Again, we offer no opinion as to whether this distinction, or any other factor, compels a different result from that reached by the Ninth Circuit as to the validity of such revenue-sharing agreements. We are reluctant, however, to hinge jurisdiction and abrogation of the Nation's sovereign immunity on a provision that at a minimum does not appear to have been contemplated by Congress as being one of the matters tribes and the states may negotiate over under the IGRA. *See* 25 U.S.C. § 2710(d)(3)(C)(i-vii).

Turning again to the language of the statute, it is evident that this Court is not compelled by the plain text of 25 U.S.C. § 2710(d)(7)(A)(ii) to adopt either of the interpretations offered by the parties to this suit. Both the State and the Nation focused their reading of 25 U.S.C. § 2710(d)(7)(A)(ii) on the language granting district courts jurisdiction "to enjoin a class III gaming activity . . . conducted in violation of any Tribal-State compact." This, however, ignores critical language in § 2710(d)(7)(A)(ii), the full text of which provides:

> The United States district courts shall have jurisdiction over— . . .
>
> > (ii) any cause of action initiated by a State or Indian tribe to enjoin a class III gaming activity located on Indian lands and conducted in violation of any Tribal-State compact *entered into under paragraph (3)* that is in effect, . . .

25 U.S.C. § 2710(d)(7)(A)(ii) (emphasis added). Paragraph (3) of the IGRA, the reference to which was ignored by both parties, governs the negotiation process tribes and states are to enter into for compacting under the Act. 25 U.S.C. § 2710(d)(3). Therefore, a proper interpretation of § 2710(d)(7)(A)(ii) is not that federal jurisdiction exists over a suit to enjoin class III gaming whenever *any* clause in a Tribal-State compact is violated, but rather that jurisdiction exists only when the alleged violation relates to a compact provision agreed upon pursuant to the IGRA negotiation process.

This interpretation of 25 U.S.C. § 2710(d)(7)(A)(ii) mitigates many of the concerns raised by both the State and the Nation. The district court expressed a view, adopted by the State, that the Nation's interpretation of 25 U.S.C. § 2710(d)(7)(A)(ii) would lead to "the absurd result that a minor infraction of a compact provision prescribing gaming hours would support an injunction, while a major breach going to the heart of the compact would stand remediless." *Ho-Chunk Nation*, 478 F. Supp. 2d at 1097. While under this Court's interpretation, 25 U.S.C. § 2710(d)(7)(A)(ii) does not extend to all violations of a Tribal-State compact, as already discussed, 25 U.S.C. § 2710(d)(3)(C) provides a list of seven matters which a Tribal-State compact negotiated pursuant to the IGRA may address:

> (C) Any Tribal-State compact negotiated under subparagraph (A) may include provisions relating to—
>
> > (i)  the application of the criminal and civil laws and regulations of the Indian tribe or the State that are directly related to, and necessary for, the licensing and regulation of such activity;
> >
> > (ii)  the allocation of criminal and civil jurisdiction between the State and the Indian tribe

necessary for the enforcement of such laws and regulations;

(iii)   the assessment by the State of such activities in such amounts as are necessary to defray the costs of regulating such activity;

(iv)   taxation by the Indian tribe of such activity in amounts comparable to amounts assessed by the State for comparable activities;

(v)   remedies for breach of contract;

(vi)   standards for the operation of such activity and maintenance of the gaming facility, including licensing; and

(vii)   any other subjects that are directly related to the operation of gaming activities.

25 U.S.C. § 2710(d)(3)(C)(i-vii). Therefore, so long as the alleged compact violation relates to one of these seven items, a federal court has jurisdiction over a suit by a state to enjoin a class III gaming activity. Limiting the scope of 25 U.S.C. § 2710(d)(7)(A)(ii) to alleged violations of the seven items enumerated in 25 U.S.C. § 2710(d)(3)(C)(i-vii) also serves to align jurisdiction under this section with the IGRA's purposes. Unlike the Nation's proposal, this interpretation does not focus solely upon state interests. However, by limiting 25 U.S.C. § 2710(d)(7)(A)(ii)'s applicability to alleged violations of those items which Congress determined tribes and states may negotiate over under 25 U.S.C. § 2710(d)(3)(C)(i-vii), this interpretation also ensures that jurisdiction is not conferred for alleged violations of provisions ancillary to the IGRA's purposes. Furthermore, narrowing the focus of 25 U.S.C. § 2710(d)(7)(A)(ii) to alleged violations of "Tribal-State compact[s] *entered into under Paragraph (3)*" is consistent with the other

provisions referenced by the State as illustrating that the lawful operation of class III gaming must be done in accord with a Tribal-State compact, since both sections cited by the State specifically refer to Tribal-State compacts "entered into under Paragraph (3)." *See* 25 U.S.C. § 2710(d)(1)(C) ("Class III gaming activities shall be lawful on Indian lands only if such activities are . . . conducted in conformance with a Tribal-State compact *entered into* by the Indian tribe and the State *under paragraph (3)* that is in effect.") (emphasis added); *see also* 25 U.S.C. § 2710(d)(2)(C) ("class III gaming activity on the Indian lands of the Indian tribe shall be fully subject to the terms and conditions of the Tribal-State compact *entered into under paragraph (3)* by the Indian tribe that is in effect.") (emphasis added).

   Having determined that federal jurisdiction under 25 U.S.C. § 2710(d)(7)(A)(ii) is limited to alleged compact violations relating to the seven items listed in 25 U.S.C. § 2710(d)(3)(C)(i-vii), the remaining issue is whether the provisions allegedly violated by the Nation fall under that list. In its amended complaint, the State alleges that the Nation violated the Compact in two ways: (1) "[b]y refusing to pay all the amounts due" under the Second Amendment's revenue-sharing agreement, and (2) "[b]y refusing to submit to binding arbitration" in violation of the Compact's Dispute Resolution provision. As discussed above, tribal-state revenue-sharing agreements do not expressly appear on the list of items tribes and states may negotiate over under 25 U.S.C. § 2710(d)(3)(C)(i-vii). The payments made to the State in this case are not limited to the State's costs of regulating tribal gaming, *see* 25 U.S.C. § 2710(d)(3)(C)(iii), and it is far from certain that the revenue-sharing agreement falls under the catchall for provisions related to "any other subjects that are directly related to the opera-

tion of gaming activities."[3] *See* 25 U.S.C. § 2710(d)(3)(C)(vii).

Federal jurisdiction under 25 U.S.C. § 2710(d)(7)(A)(ii) in this case however, does not hinge solely upon whether the revenue-sharing agreement can be deemed to be a "subject[ ] . . . directly related to the operation of gaming activities." *See* 25 U.S.C. § 2710(d)(3)(C)(vii). In its amended complaint, the State also sought an injunction pursuant to 25 U.S.C. § 2710(d)(7)(A)(ii) due to the Nation's alleged breach of the Compact's Dispute Resolution provision. The Second Amendment's inclusion of a Dispute Resolution provision, compelling the parties to submit to binding arbitration for "any dispute . . . regarding the interpretation or enforcement of the Compact," falls under the ambit of 25 U.S.C. § 2710(d)(3)(C)(v), which provides that "Tribal-State compact[s] . . . may include provisions relating to— . . . remedies for breach of contract." Therefore, the district court properly had jurisdiction, and Congress abrogated the Nation's sovereign immunity, with respect to the State's claim pursuant to 25 U.S.C. § 2710(d)(7)(A)(ii) to enjoin the Nation's class III

---

[3] In *In re Indian Gaming*, the State of California granted tribes the exclusive right to conduct Las Vegas-style class III gaming, partially in exchange for contributions by the tribes into a Revenue Sharing Trust Fund, whose funds were distributed among the State's non-gaming tribes. *In re Indian Gaming,* 331 F.3d at 1104-05. The Ninth Circuit found that this arrangement fell under the 25 U.S.C. § 2710(d)(3)(C)(vii) catchall provision, because the Revenue Sharing Trust Fund served the IGRA's purpose to "promote[ ] tribal economic development, self-sufficiency, and strong tribal governments." *Id*. at 1111 (quoting 25 U.S.C. § 2702(1)). In this case, the Nation received largely the same benefit—exclusivity—as that granted to the California tribes, but unlike *In re Indian Gaming*, the Compact between the Nation and State does not limit what the State may do with the payments it receives from the Nation.

gaming due to its alleged refusal to submit to binding arbitration.

### C.  Federal Jurisdiction for the State's Remaining Causes of Action

"Because we are obligated to consider our jurisdiction at any stage of the proceedings," *Enahoro*, 408 F.3d at 883, we observe that our interpretation of 25 U.S.C. § 2710(d)(7)(A)(ii) as it relates to the State's second cause of action does not alter the district court's finding of jurisdiction over the other claims brought by the State in its amended complaint.

The State, in its fourth cause of action, sought a declaration that it has negotiated in good faith with the Nation as required by the IGRA. However, "the Declaratory Judgment Act is not an independent source of federal subject matter jurisdiction," and requires an "independent basis for jurisdiction." *GNB Battery Technologies v. Gould, Inc.*, 65 F.3d 615, 619 (7th Cir. 1995). When a declaratory judgment is sought, "jurisdiction is determined by whether federal question jurisdiction would exist over the presumed suit by the declaratory judgment defendant." *Id.* Such an independent basis for jurisdiction exists with respect to this claim—the Nation's ability to bring suit against the State pursuant to 25 U.S.C. § 2710(d)(7)(A)(i), which grants federal district courts jurisdiction over "any cause of action initiated by an Indian tribe arising from the failure of a State to enter into negotiations with the Indian tribe for the purpose of entering into a Tribal-State compact under paragraph (3) or to conduct such negotiations in good faith." 25 U.S.C. § 2710(d)(7)(A)(i). " '[T]he separate and distinct jurisdictional question of constitutional dimension' of whether an 'actual controversy' existed," *GNB Battery Technologies,* 65 F.3d at 620, is also met in this case, because the State's amended com-

plaint pled that the Nation's complaint in arbitration included allegations that the Nation had engaged in "bad faith" negotiations in violation of the IGRA.

With respect to the State's other substantive claims against the Nation,[4] the district court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a) so long as they "derive from a common nucleus of operative fact" with the original federal claims. *Groce v. Eli Lilly & Co.,* 193 F.3d 496, 500 (7th Cir. 1999) (quoting *City of Chicago v. International College of Surgeons,* 522 U.S. 156, 164-65, 139 L. Ed. 2d 525, 118 S. Ct. 523 (1997)) (stating that the "common nucleus of operative fact" standard was codified in the statute's grant of supplemental jurisdiction over claims "so related to [the federal] claims . . . that they form part of the same case or controversy"). Such is the case here. The other claims brought by the State pertain to the same set of circumstances at issue in the federal claim under 25 U.S.C. § 2710(d)(7) (A)(ii)—the Nation and State's attempts to ascertain and resolve the impact the Wisconsin Supreme Court's decisions have on their gaming compact.

Finally, the last two causes of action brought by the State are to enforce the Dispute Resolution provision in the Compact pursuant to the FAA as it relates to the arbitrable claims in the amended complaint. As we stated when this case first came before us, "[t]he FAA by itself does not provide subject matter jurisdiction for any dispute; as a result, 'there must be diversity of citizen-

---

[4] This includes the State's first cause of action, seeking a declaration that the Nation is in violation of the IGRA by allegedly failing to adhere to the Compact's revenue-sharing and dispute resolution provisions; third cause of action for breach of contract based upon the same alleged Compact violations; and the fifth and sixth causes of action, seeking a declaration and order that the Nation pay all current and future amounts allegedly due under the Compact.

ship or some other independent basis for federal jurisdiction' to address an arbitration dispute." *Ho-Chunk I,* 463 F.3d at 659 (quoting *America's Moneyline, Inc. v. Coleman*, 360 F.3d 782, 784 (7th Cir. 2004)). Having found that all the claims which may be arbitrable are properly before the district court, the district court has jurisdiction over the State's claims to enforce the Dispute Resolution provision pursuant to the FAA.[5] *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-77, 130 L. Ed. 2d 753, 115 S. Ct. 834 (1995) (interpreting 9 U.S.C. § 2). Thus, the remaining question is whether the Nation's sovereign immunity barred the district court from hearing any of these claims.

### D.  The Nation's Sovereign Immunity with Respect to the State's Remaining Claims

While federal jurisdiction exists with respect to all the State's remaining causes of action, the Nation's sovereign immunity still barred these claims from being brought against it unless this immunity had been waived by the tribe or "unequivocally" abrogated by Congress. *See C & L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe*, 532 U.S. 411, 418, 121 S. Ct. 1589, 149 L. Ed. 2d 623 (2001); *see also Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe,* 498 U.S. 505, 509, 111 S. Ct. 905, 909, 112 L. Ed. 2d 1112 (1991). The Supreme

---

[5]  The FAA's applicability in this case depends upon whether the Compact "affects interstate commerce." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-77, 130 L. Ed. 2d 753, 115 S. Ct. 834 (1995) (interpreting 9 U.S.C. § 2). This Court found it unnecessary to address this issue when it arose in *Ho-Chunk I*, 463 F.3d at 661-62, but the district court, as part of its ruling on the Nation's motion for summary judgment, found that the Compact did affect interstate commerce. We decline to address on this appeal the merits of the district court's decision on this issue.

Court has held that Congress did not abrogate state sovereign immunity in the Supplemental Jurisdiction Act, *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 541-42, 152 L. Ed. 2d 27, 122 S. Ct. 999 (2002), and we find no indication Congress intended a contrary result with respect to tribal sovereign immunity under this statute. Similarly, the State has not argued that 25 U.S.C. § 2710(d)(7)(A)(i) or the FAA contains such an abrogation on Congress's part. Thus, the district court's ability to hear these remaining claims depends upon whether the Nation has waived its sovereign immunity.

The Nation and the State both waived their respective sovereign immunity in Paragraph 11, Section XXIV.B of the Second Amendment to the Compact, which provides:

> The Nation and the State expressly waive, to the extent the State or the Tribe may do so pursuant to law, any and all sovereign immunity with respect to any claim brought by the State or the Nation to enforce any provision of this Compact, as amended.

The Nation argues that the Wisconsin Supreme Court's decision in *Panzer*, which held that "[t]he Governor lacked any inherent authority to waive the state's sovereign immunity," *Panzer*, 680 N.W.2d at 700, rendered the State's sovereign immunity in the Second Amendment unenforceable, which in turn revoked the Nation's waiver of its sovereign immunity. The district court did not squarely address this issue in its memorandum and order on the Nation's motion for summary judgment. The district court did however, hold that the *Panzer* decision did not constitute a determination "by a court of competent jurisdiction" that the Duration provision in the Second Amendment was unenforceable or invalid. The Nation contends that the district court's decision regarding *Panzer's* effect on the Duration provision's validity effectively amounted to a determination that the Nation's

waiver of its sovereign immunity had not been revoked. Based on this reasoning, the Nation urges this Court to review, pursuant to the collateral order doctrine, the district court's holding regarding *Panzer*'s applicability to the Compact.

The State questions whether the collateral order doctrine properly gives this Court appellate jurisdiction to determine the *Panzer* decision's effect on the parties' Compact. According to the State, even if the *Panzer* holding was applicable to the State's waiver of its sovereign immunity in the Second Amendment, this did not have the effect of revoking the Nation's waiver of its sovereign immunity. We find this to be the case, and thus need not address on interlocutory appeal the merits of the district court's finding that *Panzer* did not render the Second Amendment's Duration clause invalid or unenforceable.

*Panzer* held that the Governor lacked the "inherent or delegated power" to waive the State's sovereign immunity, and did not address a tribe's authority to waive its sovereign immunity. *See Panzer*, 680 N.W.2d at 700-01. Therefore, even if the Wisconsin Supreme Court's holding in *Panzer* served as a finding "by a court of competent jurisdiction" for purposes of the Second Amendment, it would only constitute a finding that the waiver of the State's sovereign immunity was invalid or unenforceable. The Nation does not offer a reference to any specific provision in the Second Amendment that provides that such a finding with respect to the State's sovereign immunity serves to automatically revoke the Nation's waiver of its immunity. Instead, the only provisions to explicitly address the Nation's ability to revoke its sovereign immunity waiver, Paragraph 11, Section XXIV.E & F in the Second Amendment, in both cases provide that such a revocation may only occur when the Nation is unable to obtain a judicial remedy or resolution as a result of the State's immunity

from suit. At no point during the course of this ongoing litigation between the parties has the State invoked its sovereign immunity. Therefore, even if the *Panzer* decision did serve to invalidate the State's sovereign immunity waiver in the Compact, the Nation's waiver of its immunity remains intact since the State has never invoked its immunity from suit during the course of litigation with the Nation. Accordingly, because a contrary determination on our part with respect to the district court's holding that *Panzer* did not render the Duration provision unenforceable or invalid would not negate the Nation's waiver of sovereign immunity under the Compact, we hold that we do not have jurisdiction to address the merits of that decision on interlocutory appeal.

### E.  The Second Amendment's Arbitration Clause

The Nation makes a final argument that, even if we were to hold, as we do, that the *Panzer* decision did not automatically revoke the Nation's sovereign immunity waiver, the scope of the Nation's waiver is still limited only to arbitration. This is not the case.

First, it is not altogether clear whether all disputes arising under the Compact are subject to arbitration. The Dispute Resolution provision in Paragraph 11, Section XXIII of the Second Amendment does include an arbitration clause, which provides:

> If any dispute arises between the Parties regarding the interpretation or enforcement of the Compact, Amendment, and this Second Amendment, except as otherwise provided in this Second Amendment, that dispute ("Dispute") shall be resolved in accordance with the following procedure: . . .

The section then goes on to provide that the parties will first meet and confer, but if that process does not lead to

a mutually satisfactory result, "either Party may serve a demand for arbitration on the other Party." If that occurs, "the Parties shall resolve the Dispute by binding arbitration," with actions to compel arbitration, determine whether an issue is arbitrable, or confirm an award to be brought in the United States District Court for the Western District of Wisconsin. This arbitration clause, however, is arguably in some tension with the first clause of the Sovereign Immunity section, which states:

> Unless the Parties agree otherwise, if a dispute arises regarding compliance with or the proper interpretation of the requirements of the Compact, as amended, under Sections IV (Authorized Class III Gaming), XXIII (Dispute Resolution), XXIV (Sovereign Immunity), XXXIV (Payment to the State), and XXV (Reimbursement of State Costs), the dispute shall be resolved by the United States District Court for the Western District of Wisconsin.

Second Amendment, Paragraph 11, Section XXIV.A.

Similarly, contrary to the Nation's claim, the provision waiving the parties' sovereign immunity is not exclusively limited to the arbitration process set forth in the Dispute Resolution section:

> Nothing contained herein shall be construed to waive the immunity of the State or the Nation except for suits arising under Sections XXIII [Dispute Resolution] and XXIV [Sovereign Immunity, including Section XXIV.A] of this Compact, as amended. The Nation and the State expressly waive, to the extent the State or the Tribe may do so pursuant to law, any and all sovereign immunity with respect to any claim brought by the State or the Nation to enforce any provision of this Compact, as amended. This waiver includes suits to collect money due to either Party pursuant to the terms of the Compact, as amended; to obtain an order

to specifically enforce the terms of any provisions of the Compact, as amended; or to obtain a declaratory judgment and/or to enjoin any act or conduct in violation of this Compact, as amended. This waiver also includes a suit to enforce Section XXIII [Dispute Resolution] of this Compact as amended. . . .

Second Amendment, Paragraph 11, Section XXIV.B. If the Nation's waiver of its immunity were truly limited solely to arbitration, only the last sentence of the provision excerpted above would have been necessary—that the waiver "includes a suit to enforce Section XXIII of the Compact as amended."

Although the provisions discussed above make clear that the Nation's waiver of its sovereign immunity was not limited solely to arbitration proceedings, these same provisions reflect that the district court had the responsibility to determine which claims were arbitrable. The State sought relief under the Compact's arbitration process, with its seventh and eighth causes of action seeking that the court compel the parties to proceed with binding arbitration on all arbitrable issues. Once the district court found, as it did in its summary judgment ruling, that the FAA applied to the Compact, the district court was charged with determining the scope of this arbitration agreement. *Hill's Pet Nutrition v. Fru-Con Constr. Corp.*, 101 F.3d 63, 65 (7th Cir. 1996). In determining whether the Nation and State agreed to arbitrate the claims brought by the State in its amended complaint, the district court should have "rel[ied] on state contract law governing the formation of contracts." *James v. McDonald's Corp.*, 417 F.3d 672, 677 (7th Cir. 2005). Importantly for this case, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *Stevens Constr. Corp. v. Chi. Reg'l Council of Carpenters*, 464 F.3d 682, 686 (7th Cir. 2006) (quoting

*AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649-50, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986)). While this Court has recognized that "where '[the] court's decision on arbitrability collapses into the same inquiry as [the] decision on the merits,' a court may need to touch on the merits of an issue that ordinarily would be decided in arbitration," this was not required of the district court in this case. *Id.* at 687 (quoting *BCS Ins. Co. v. Wellmark, Inc.*, 410 F.3d 349, 352 (7th Cir. 2005) (quotation marks omitted)). If the Nation's waiver of its sovereign immunity was dependent upon the *Panzer* decision's effect on the Compact, then the district court may have been justified in addressing that issue on the merits. Having determined, however, that this finding on the district court's part had no bearing on the Nation's waiver of its sovereign immunity under the Compact, this was not a circumstance where the arbitrability of the issue "collapse[d] into the same inquiry as [the] decision on the merits." *See id.* Therefore, the district court erred in not first determining the arbitrability of the State's claims under the Compact's Dispute Resolution provision, before proceeding to address the Nation's remaining claims for summary judgment. As a result, we vacate the district court's order regarding the Nation's motion for summary judgment, with the exception of its determination that the Compact was subject to the FAA and that federal jurisdiction existed over the State's claim seeking a declaration that it negotiated in good faith. We remand back to the district court for it to determine the arbitrability of the State's causes of action against the Nation.[6]

---

[6] We note that one of the claims raised by the Nation in its motion for summary judgment is that the renegotiation process set forth in the Dispute Resolution provision, which permits the arbitrator to decide on substitute provisions in the Compact,

(continued...)

### III.  Conclusion

For the foregoing reasons, we AFFIRM that federal subject matter jurisdiction existed, and that the Nation's sovereign immunity was similarly abrogated, with respect to the State's second cause of action seeking to enjoin class III gaming due to the Nation's alleged violation of the Compact's Dispute Resolution provision. We also VACATE the district court's order on the Nation's motion for summary judgment, with the exception of the district court's rulings that the FAA applied to the Compact and that federal jurisdiction exists over the State's claim seeking a declaration that it negotiated in good faith, and REMAND to the district court to determine which of the State's causes of action are subject to arbitration.

A true Copy:

      Teste:

                    _____

                    *Clerk of the United States Court of*
                     *Appeals for the Seventh Circuit*

---

[6] (...continued)
is preempted by 25 U.S.C. § 2710(d)(7)(B)(vii) of the IGRA. It is not necessary for this Court, or the district court on remand, to address this claim at this time, since the issue will only become ripe if it is determined that *Panzer* invalidated or voided provisions in the Compact.